COMMONWEALTH *vs.* CHARLES H. HARTWELL.

Norfolk. Jan. 27, 28. — Feb. 27, 1880. MORTON & SOULE, JJ., absent.

An indictment for manslaughter alleged that the defendant was a conductor, in the employ of a certain railroad corporation, in charge of a freight train, which had been run over the outward track of the corporation to a certain place, under his direction; that the corporation had established certain rules in regard to the crossing of the inward track by trains on the outward track, which rules were then in force and known to the defendant; that it was the defendant's duty not to conduct his train from the outward track across the inward track, without first sending forward the proper signal to warn the driver of any approaching train on the inward track that he could not safely pass without stopping; that the defendant, knowing that a train on the inward track was then due and approaching, wilfully, and in a wanton, negligent and improper manner, and while the train on the inward track was then approaching and due, drove his own engine across the inward track to a side track, and attached to it certain cars, and again crossed the inward track to the outward track, leaving the switch out of line so as to disconnect the rails upon the inward track, without first sending forward any signal to warn the driver of the approaching train, in accordance with the rules of the corporation; that, by means of the premises and the felonious neglect and omission of the defendant, the driver of the approaching train did not stop, but continued on his course, and by reason of the misplacement of the switch the train was thrown from the track and a passenger killed. *Held,* that the allegation of the defendant's knowledge of the approach of the train on the inward track was a material allegation, and must be proved as laid.

ENDICOTT, J. This is an indictment for manslaughter, in which the defendant is charged with negligence and omission of duty, as conductor of a freight train, whereby another train was thrown from the track, and a passenger thereon was killed.

The indictment recites that the defendant was a conductor in the employment of the Old Colony Railroad Company, and was, on October 8, 1878, in charge of a freight train, on the road of the company, which had been run over the outward track from Boston to the Wollaston station in Quincy under his direction; that the company had established for the guidance of its servants proper and sufficient rules and regulations, having relation to the crossing of the inward track, over which trains passed on their way to Boston, by locomotive engines and trains using or running upon the outward track, which rules and regulations were in force at the time and well known to the defendant; and that it became and was his duty not to conduct his locomotive engine from the outward track across the inward track, without

first sending forward the proper signal to warn the driver of any train approaching on the inward track that he could not safely pass without stopping.

The indictment then charges as follows: "Yet the said Hartwell, well knowing the premises, and well knowing that a certain train, to wit, a train consisting of a certain other locomotive steam-engine, and divers, to wit, twenty cars attached thereto and drawn thereby, was then and there lawfully travelling and being propelled on and along the said inward track of said railroad, and was then due and about to arrive at that part of said railroad in Quincy aforesaid, near the Wollaston station aforesaid, but disregarding his duty in that behalf did" at the same time and place "wilfully and feloniously, and in a wanton, negligent and improper manner, and contrary to his duty in that behalf, and while the last-mentioned train was then and there due and about to arrive as aforesaid, conduct and drive, and suffer, permit and direct to be conducted and driven," his own locomotive engine across the inward track to a side track, and attached to it certain freight cars, and again crossed the inward track to the outward track, "thereby leaving the switch thrown out of line, so as to disconnect the rails upon the inward track, without first sending forward any signal whatever to warn the driver of said approaching train so due as aforesaid," in accordance with the rules and regulations of the company.

The indictment, after again stating that this train of twenty cars was then due, and that the defendant neglected to send forward the required signal, proceeds to charge, in substance, that, by means of the premises and the felonious neglect and omission of the defendant, the driver of the approaching train, then due at the Wollaston station, was induced to believe that the inward track was unbroken and unobstructed, and that he might safely pass; that he did not stop, but continued on his course, and, by reason of the misplacement of the switch, the train was thrown from the track, and a passenger therein named Patrick Reagan was killed.

It appeared in evidence that the train thus thrown from the track was an extra train, and that the defendant had a written notice from the superintendent of the company that it would run on that day. The notice contained the time-table of the

train, and it was due in Boston soon after five o'clock in the after-
noon.    The defendant's train left Boston on its regular time, at
half-past six, more than an hour after the extra train was due
in Boston, and reached the Wollaston station soon after seven.
The extra train was then, according to the time-table contained
in the notice received by the defendant, more than two hours
behind time.    The defendant, while at the Wollaston station, in
obedience to directions from the freight agent, took the freight
cars from the side track, crossing the inward track, as set forth
in the indictment, without sending forward the required signal to
warn any train approaching on that track.    No evidence was
introduced by the government that the defendant knew that the
extra train was then due and about to arrive at the Wollaston
station.    On the contrary, it appeared by the evidence that he
then understood it was in Boston, and stated to his engineer
before he left Boston that it had arrived.

Among other instructions requested, the defendant asked the
court to rule, that the averment that Hartwell well knew that
a certain train " was then and there lawfully travelling and
being propelled on and along the said inward track of said rail-·
road, and was then due and about to arrive at that part of said
railroad in Quincy aforesaid near the Wollaston station afore-
said," was a material averment, which must be proved by the
Commonwealth, and there was no evidence in the case to sup-
port that averment.

The court declined to give this ruling; and it is contended by
the government that this averment need not be proved as laid,
but can be rejected as surplusage.    But we are of opinion that
the ruling should have been given, and that the defendant's ex-
ceptions on this point must be sustained.

The precise question is whether this averment can be rejected
as mere surplusage, or whether it is of such a character as not
only to be descriptive of the negligence charged, but, in its con-
nection with the other parts of the indictment, is notice to the
defendant of the exact charge which he has to meet.

The defendant is charged with the crime of manslaughter;
and the specific nature of the charge is that, by reason of his
culpable negligence and omission to perform his duty, Patrick
Reagan was killed.    His guilt therefore depends solely upon the

question whether he was negligent, and failed to perform his duty upon a given occasion, and under such circumstances that he may be held criminally responsible for the death. He is entitled, therefore, to have the nature, character and extent of the negligence, which connects him with the death of Reagan, fully and plainly, substantially and formally described to him in the indictment.

This the indictment does or attempts to do, and charges in substance that, well knowing the rules of the road, and his duty in that regard, and what signals should be given when an engine or train from the outward track crosses the inward track, and also well knowing that this particular train was then due and about to arrive upon that track, he neglected to give the required signal, and the death of Reagan was the result. The pleader has made the knowledge of the defendant that the express train was due, as well as his knowledge of the rules and his duty in regard to them, an essential and material portion of the description of the acts and conduct of the defendant which go to constitute the negligence charged; and the negligence charged is not merely that he failed to give the signal required to notify any approaching train, but that he failed to give it when he knew there was an instant and pressing necessity for so doing, because this particular train was then due at that point.

This was not an impertinent averment, or foreign or inapplicable to the charge, because proof of such knowledge would establish the most culpable negligence. The gist of the indictment is the defendant's negligence; and in alleging it this specific act of negligence, to wit, a disregard of his duty to warn this train, which he knew then to be imminent, is made a part of the description of that which is essential to the charge. The general neglect of duty is resolved into this particular manner of neglecting it; and, having charged a general neglect, the indictment notifies the defendant that the neglect of his general duty was in this specific mode. While it is unnecessary to decide whether or not it would be sufficient in this case to allege in general terms a neglect of duty, in not sending out a signal to warn any approaching train, without alleging that the defendant knew that the inward track was liable at any time to be used by an approaching train; it is clear that, when not merely

general neglect of duty is alleged, but the particular in which it was violated is carefully and with precision set out, the defendant has the right to assume that the specific negligence thus alleged is the mode in which the general duty has been violated.

The government having selected the precise ground upon which to stand, in describing and expressing the nature and extent of the defendant's negligence, it must be confined to the limits which it has prescribed for itself. For it is well settled that an allegation must be proved, which is descriptive of the identity of the charge, or of that which is legally essential to the charge ; and when any allegation narrows and limits that which is essential, it is necessarily descriptive. *Commonwealth* v. *Wellington*, 7 Allen, 299, and cases cited. *Commonwealth* v. *Jeffries*, 7 Allen, 548. *Commonwealth* v. *Hughes*, 5 Allen, 499. *Commonwealth* v. *Gavin*, 121 Mass. 54, and cases cited. *United States* v. *Howard*, 3 Sumner, 12. *United States* v. *Porter*, 3 Day, 283. *Churchill* v. *Wilkins*, 1 T. R. 447. *Bristow* v. *Wright*, 2 Doug. 665. 1 Chit. Crim. Law, 294, 557. 1 Greenl. Ev. § 65. The same principle has been recognized in those cases in this Commonwealth, in which it has been held that an averment might be treated as surplusage, when not descriptive of the identity of the charge, or of anything essential to it. *Commonwealth* v. *Pray*, 13 Pick. 359. *Commonwealth* v. *Randall*, 4 Gray, 36. *Lyons* v. *Merrick*, 105 Mass. 71. *McNeil* v. *Collinson*, ante, 313.

It is undoubtedly true that, when an indictment alleges the commission of an offence by various means, it is sufficient to prove enough of the means to constitute the offence; as, in the familiar case of obtaining money by false pretences, proof of all the pretences charged is not necessary; it is sufficient if enough are proved to establish the charge. But when the indictment states a pretence in general terms, and then specifies the particulars, it is the particular, and not the general, statement which must be proved; as, for example, if it alleges that a defendant, as a representation of his ability to pay, stated that he owned a large amount of stock in corporations, and then specifies a certain number of shares that he claimed to own in a particular stock, the allegation being thus qualified and limited, the proof must relate to that particular stock. In *Commonwealth* v. *Jeffries, ubi supra,* the indictment charged that the defendant

falsely pretended that he had an order from a certain person in New York, whose name he did not disclose, to purchase goods; the proof was that he falsely pretended that he had an order to purchase them, without stating that it came from a person in New York; and it was held that the variance was fatal, and there was no evidence to support the charge. See *Rex* v. *Plestow*, 1 Camp. 494. And when a person is charged with stealing a white horse, the specific averment of color is not necessary, but, being descriptive of that which is material, it cannot be rejected as surplusage, but must be proved as laid. 3 Stark. Ev. (1st ed.) 1531. See also *State* v. *Noble*, 15 Maine, 476; *Commonwealth* v. *Gavin*, 121 Mass. 54.

In the case at bar, the negligence of the defendant is essential to support the charge of manslaughter. The specific averment that he knew that this particular train was then due bears directly upon that question; and, being set out in that part of the indictment which charges the negligence, it is descriptive of the facts and circumstances which surrounded the defendant at the time, in view of which he acted or failed to act, and of the kind and character of the negligence of which he is alleged to have been guilty. There being no evidence to support it, the conviction cannot be sustained.

In this view of the case, it becomes unnecessary to consider the other questions fully and ably argued at the bar.

*Exceptions sustained.*

*D. S. Richardson & S. Hoar*, for the defendant.

*G. Marston*, Attorney General, *& F. H. Gillett*, Assistant Attorney General, for the Commonwealth.