Brannen *v.* The Kokomo, Greentown and Jerome Gravel Road Company.

No. 13,215.

BRANNEN *v.* THE KOKOMO, GREENTOWN AND JEROME
GRAVEL ROAD COMPANY.

NEGLIGENCE.—*Personal Injury.*—*Contributory Negligence of Third Person.*—
Where a person, himself without fault, is injured by the negligence of
a turnpike company, while riding in a private conveyance over which
he has no control and which is in charge of the owner, a competent
driver, the latter's negligence will not defeat a recovery by such injured
person.

SAME.—*Special Verdict.*—*Judgment Upon.*—Where it can not be determined
from the facts found by the jury, in a special verdict, whether or not
the plaintiff was free from negligence contributing to the injury sued
for, he is not entitled to a judgment upon the special finding, unless it
be shown that the injury was the result of the wilful wrong of the de-
fendant.

SAME.—*Turnpike Company.*—*Coercing Payment of Toll.*—*Wilful Injury.*—A
turnpike company may lawfully close its gates as a means of coercing
the payment of toll; and where a gate-keeper, to prevent the passage
of travellers who are apparently attempting to drive by without the
payment of toll, suddenly lowers the gate-pole, whereby an occupant of
the vehicle is injured, the company is not, without more, liable as for a
wilful injury.

From the Howard Circuit Court.

*J. C. Blacklidge, W. E. Blacklidge* and *B. C. H. Moon,* for
appellant.

*M. Bell* and *W. C. Purdum,* for appellee.

ZOLLARS, J.—In their special verdict, the jury found that,
in 1884, the appellee was a gravel road corporation owning
and operating the Kokomo, Greentown and Jerome gravel
road as a toll-road; that, on the 30th day of October, 1884,
Mary Carter was the employee and agent of the company,
authorized to collect toll from travellers over the road; that
she occupied a toll-house about one mile east of the city of
Kokomo; that Jacob Templin, her son, lived with her and
assisted in the collection of tolls; that about 8:30 P. M. of
said day appellant was riding in a spring wagon drawn by

two horses and driven by David Brannen, he being the owner of the horses and wagon; that there were in the wagon, besides appellant and said Brannen, four other persons, all of whom were on their way from Kokomo to near Greentown, some ten miles from that city; that the horses were but three years old, and one of them not gentle; that Brannen, the owner and driver, was considerably intoxicated, and when near the toll-gate, and intending to pass it without the payment of toll, stopped the horses, and, without speaking to them, struck them with a whip, which caused them to start and go in a lope and rapid gait, passing the toll-gate; that said Jacob Templin, who was collecting toll at the time, believing that the horses were thus driven with the intention of the persons in the wagon to run by the gate without the payment of toll, for the purpose of stopping them and compelling the payment of the proper toll, suddenly drew down the pole, erected for the purpose of preventing persons passing without the payment of toll, and in so doing, and by reason of the rapid driving, the same struck the front end of the wagon and threw from it the six persons and the three seats upon which they were riding, and appellant was injured and suffered damages in the sum of fifty dollars; that, had not the driver struck the horses and caused them to move so rapidly, the pole would not have been let down, and appellant would not have received the injury; that, the horses being young, it was an act of imprudence to strike them with a whip before passing the toll-gate, which act of imprudence or wilful misconduct contributed to appellant's injury; that neither of the persons in the wagon tendered or offered to pay any toll until after appellant had received the injury.

Upon the special verdict, the substance of which we have given above, appellant moved for judgment in his favor in the sum of fifty dollars. That motion was overruled and judgment was rendered for appellee for its costs. For a reversal of that judgment appellant prosecutes this appeal.

That Brannen, the owner and driver of the team, was guilty, not only of negligence, but also of a positive wrong, in attempting to pass the gate as he did without the payment of toll, is clear beyond question.

Whether or not, in a case like this, where the injured party was voluntarily riding in a private conveyance, the negligence of the owner and driver, over whom he had no control, and who was a fit person to manage the horses, should be so imputed to him as to defeat a recovery on his part, assuming that he was without personal fault, and that the only wrong on the part of the defendant was negligence, is a question upon which the authorities are not in accord.

This court, however, has heretofore adopted and followed the line of decisions which hold that in such a case negligence will not be so imputed. *Town of Albion* v. *Hetrick*, 90 Ind. 545, 550 (46 Am. R. 230) ; *Terre Haute, etc., R. R. Co.* v. *McMurray*, 98 Ind. 358, 369 (49 Am. R. 752). See, also, *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186.

It is the settled law in this State, also, that where the ground of the action is negligence, it must be a case of unmixed negligence; that is, the plaintiff, in order to recover in such an action, must be free from negligence which contributed to the injury. It is equally well settled here, that in such an action the plaintiff must allege in his complaint that he was free from negligence which contributed to the injury; that it must in some way be made to appear from the evidence that he was free from such negligence; and that, if from the whole evidence it can not be determined whether or not he was free from such negligence, the finding and judgment must be against him. *Stevens* v. *Lafayette, etc., G. R. Co.*, 99 Ind. 392 ; *Eberhart* v. *Reister*, 96 Ind. 478; *Louisville, etc., R. W. Co.* v. *Lockridge*, 93 Ind. 191 ; *Lyons* v. *Terre Haute, etc., R. R. Co.*, 101 Ind. 419 ; *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Indiana, etc., R. W. Co.* v. *Greene*, 106 Ind. 279 (55 Am. R. 736); *City of Fort Wayne* v. *Coombs*, 107 Ind. 75; *Belt R. R. Co.* v. *Mann,*

107 Ind. 89; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer*, 99 Ind. 486. See, also, Pierce Railroads, 298, and cases there cited.

In the case before us the facts were found by the jury, and hence, as to whether appellant, upon those facts, was, or was not, negligent, is a question of law for the court. *City of Indianapolis* v. *Cook*, 99 Ind. 10; *Conner* v. *Citizens Street R. W. Co.*, 105 Ind. 62 (55 Am. R. 177); *Pittsburgh, etc., R. R. Co.* v. *Spencer, supra; Town of Albion* v. *Hetrick, supra; Indianapolis, etc., R. W. Co.* v. *Watson*, 114 Ind. 20.

As we have stated, when the issue is one of negligence, in order that the plaintiff may recover, it must be made to appear from the evidence that he was not guilty of negligence contributing to the injury. In this case, we are not called upon to pass upon the evidence, but upon the facts which the jury have found from the evidence. While there may be ground for argument as to whether the facts found affirmatively show appellant to have been guilty of wrong and contributory negligence, we think that there is no reasonable escape from the conclusion that the facts so found fail to show that he was not guilty of such wrong and negligence. The correctness of this conclusion will be made more apparent by a reference to some of the facts stated in the special verdict, without undertaking to state just how much weight should be given to each separately. In the first place, the intoxication of the driver and his course in striking the young horses and attempting to run them through the gate without the payment of toll, show, at least, that he was reckless and bold, if, indeed, he was not an unfit person to manage the team. In the second place, appellant must have known that toll was due and should be paid at the toll-gate. He knew, also, that no toll was paid or tendered before the attempt to pass the gate. There is nothing to show that he in any way remonstrated or objected to the course adopted by the driver to pass the gate without the payment of toll. For aught that is shown in the special verdict, he was ac-

quiescing in the purpose of the driver, and all that he did in attempting to carry out that purpose.

Having reached the conclusion that appellant is not shown to have been free from wrong or negligence which contributed to the injury, it must follow that he can not recover, unless appellee is chargeable with something more than negligence.

If, upon the facts found, it may be declared as a matter of law that in the lowering of the gate-pole appellee is chargeable with a wilful wrong, appellant may recover, all other necessary facts being found in his favor, notwithstanding he is not shown to have been free from contributory negligence.

Contributory negligence ceases to be a defence when the wrong on the part of the defendant is, within the meaning of the law, wilful.   Terre Haute, etc., R. R. Co. v. Graham, 95 Ind. 286 (48 Am. R. 719);   Ivens v. Cincinnati, etc., R. W. Co., 103 Ind. 27.

It remains, therefore, to determine whether the court ought to say, as a matter of law, that, upon the facts found in the special verdict, appellee was guilty of a wilful wrong which caused the injury to appellant.

In defining wilfulness, which will justify a recovery notwithstanding contributory negligence on the part of the plaintiff, it was said, in the late case of Palmer v. Chicago, etc., R. R. Co., 112 Ind. 250, that there may be a wilful act in a legal sense, without a formal and direct intention to kill or wound any particular person ; or, in other words, there may be a constructive or an implied intent without an express one.

In the case of Pennsylvania Co. v. Sinclair, 62 Ind. 301 (30 Am. R. 185), it was said :   " When an intention to commit the injury exists, whether that intention be actual or constructive only, the wrongful act ceases to be a merely negligent injury, and becomes one of violence or aggression."

In the case of Louisville, etc., R. W. Co. v. Bryan, 107 Ind. 51, it was said :   " To constitute a wilful injury, the act which

produced it must have been intentional, or must have been done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of."

And again, in the case of *Belt R. R. Co.* v. *Mann,* *supra,* it was said: " It is beyond question, that to entitle one to recover for an injury to which his own negligence may have contributed, the injurious act or omission must have been purposely and intentionally committed, with a design to produce injury, or it must have been so committed under such circumstances as that its natural and probable consequence would be to produce injury to others. There must have been either an actual or constructive intent to commit the injury. The act must have involved conduct, *quasi* criminal in character." See, also, *Louisville, etc., R. W. Co.* v. *Ader,* 110 Ind. 376.

In the case of *Pennsylvania Company* v. *Sinclair, supra,* it was said: " As a matter of evidence, proof that the misconduct of the defendant was such as to evince an utter disregard of consequences, so as to imply a willingness to inflict the injury complained of, may tend to establish wilfulness on the part of the defendant." See, also, *Gregory* v. *Cleveland, etc., R. R. Co.,* 112 Ind. 385.

The law under which appellee was incorporated provides that the directors of the company may erect toll-gates and exact toll from persons travelling on the road. R. S. 1881, section 3640.

The purpose of the gate clearly is to enable the company to prevent the passage of travellers over the road without the payment of toll. In other words, it is intended to be a means of coercing the payment of the proper toll. The gate could be of no consequence if the company had not the right to close it, and thus prevent such passage of travellers over the road until the payment of the legal toll by them.

That the company has the right to close the gate and detain travellers until they pay the proper toll, is further shown

by section 3643, which provides a penalty for the unreasonable detention of such travellers after they have paid the toll.

Section 3644 imposes a penalty upon persons who shall run by the toll-gate without the payment of toll, or who shall defraud the company out of the legal toll, but it does not, either expressly or by implication, take from the company the right to close its gates, and thus prevent the passage of travellers on the road until the proper toll shall have been paid.

The company, then, had the right to close the gate as a means of coercing the payment of the legal toll, and in so doing its act was neither " unlawful " nor " wrongful," as charged in the complaint, unless, by reason of the time and manner of the closing, it was guilty of negligence or a wilful wrong.

As we have seen, it can not be held liable in this action on the ground of negligence, because it is not made to appear that appellant was free from negligence which contributed to the injury.

There is not sufficient in the special verdict to justify the court in declaring, as a matter of law, under the rule of the cases above, that the injury was wilfully inflicted by the servant of the company, assuming that Templin is shown to have been a servant or agent of the company, so that it became liable for his acts.

It is stated in the verdict that, believing that the horses were driven fast with the intention on the part of those in the wagon of running by the gate without the payment of toll, for the purpose of stopping them and compelling the payment of the proper toll, Templin suddenly drew down the gate-pole. That does not show that Templin had any actual intention or purpose to injure appellant or others in the wagon. On the other hand, it shows that he was attempting to do what he had a legal right to do, viz., to stop them, and thus compel the payment of the proper toll. Nor

is it shown that what he did was "done under such circumstances as evinced a reckless disregard for the safety of others, and a willingness to inflict the injury complained of." It is stated in the verdict that, when near the toll-gate, Brannen stopped the horses and, without speaking to them, struck them with a whip, which caused them to start in a lope and rapid gait, but it is not stated how near to the gate they were thus struck and started. It may be that they were so near as to make the lowering of the gate-pole not only negligence, but such recklessness as to manifest a willingness to inflict the injury. On the other hand, the distance may have been such as to reasonably induce Templin to believe that he could lower the pole before the horses would reach it, and that, by so lowering it, those in the wagon would stop the horses before coming in collision with it. Upon any view that may properly be taken, there is not sufficient stated in the verdict to justify the court in concluding, as a matter of law, that the injury to appellant was wilfully inflicted.

Having reached the conclusions above stated, it will not be necessary for us to consider the contentions of appellee's counsel that the complaint does not charge that the injury was wilfully inflicted, and that the facts stated in the special verdict do not sufficiently show that Templin was a representative of the company, so as to make it liable for his acts.

Judgment affirmed, at appellant's costs.

Filed May 29, 1888.