166 P.2d 816

**ALABAM FREIGHT LINES v. PHOENIX BAKERY, Inc.**

No. 4797.

Supreme Court of Arizona.

Feb. 25, 1946.

Theodore G. McKesson and Thomas P. Riordan, both of Phoenix, for appellant.

Snell, Strouss & Wilmer, of Phoenix, for appellee.

LaPRADE, Judge.

Plaintiff-appellant instituted this action in the court below for recovery of damages to its truck in a collision with defendant-appellee's truck. The facts are conceded to be: On August 20, 1943, at about 3 o'clock in the morning, plaintiff's truck with trailer was being driven in a westerly direction over and on the right-hand portion of Highway 70, at a point approximately 30 miles west of Safford where the road, on its westerly course, ascends to and passes through a cut on a hill crest with a left-hand curve. At the same time, defendant's truck with semitrailer was being driven in an easterly direction along the highway, immediately following another truck and trailer being driven upgrade to the crest of the hill above mentioned. On its easterly course the highway ascends this hill on a moderate grade with a right-hand curve through the cut. A high embankment borders the highway on the north side. A solid or nonpassing white line was painted down the middle of the road from a point considerably west of the hill and over its summit. Defendant's truck driver turned his truck over this white line and attempted to pass the preceding truck on the left. His view of the road was obscured by the curve and the truck which he was attempting to pass. The driver of plaintiff's truck, as he approached the crest of the hill, was proceeding on his proper side of the road in a westerly direction at a speed of 30 to 35 miles per hour, and as he came through the cut at the hill crest he saw defendant's truck in front of him on the northerly side (wrong side) of the road just over the summit, at a distance of not more than 60 feet. The driver of the eastbound truck, which defendant's truck was attempting to pass, upon seeing plaintiff's westbound truck, pulled as far to the south as possible. The driver of defendant's truck slowed down to drop back to the rear of the preceding eastbound truck but was unable to do so be-

fore the collision. The driver of plaintiff's truck fully applied his brakes and turned off the road to the right as far as the embankment would allow, but was unable to stop before the trucks collided. At the rate of speed he was traveling, the driver's testimony indicated he could not stop the truck within the range of his vision. The collision between the two trucks occurred well over on the north side of the highway (plaintiff's side), the front wheels of defendant's truck being seven feet northerly of the center line of the road, and the cab portion of plaintiff's truck resting on the north embankment and over a portion of defendant's truck. Both trucks were damaged. Quickly stated, the bald facts are: Each party was driving a big truck with trailer attached approaching the crest of the hill from opposite directions on an S-curve through a cut. When the plaintiff reached the crest and started over the hill on his own side of the road, there the defendant was, in front of him on the wrong side of the road, attempting to pass a slow-moving truck and trailer in front of him, and in a position from which he could not extricate himself. The highway was completely occupied—plaintiff pulled to his right as far as he could and ran his truck into the side of the cut, but still could not avoid running into defendant's equipment. The situation was graphically put in the words of the driver of the truck that the defendant was attempting to pass. His testimony is as follows:

"Q. * * * What was the furthest point that the Holsum truck (defendant's truck) reached in passing, that is, was it even with the nose of your equipment, the head of your radiator? A. No.

"Q. How far did it get in passing you? A. He was up to the front section of my semi. In other words, the trailer, his radiator was even with some portion of the front section of that trailer. I don't remember just exactly where it was.

"Q. Was the nose—I believe he has an International, was it? A. That is right.

    *     *     *     *     *     *

"Q. Was the nose of that equipment, that is, the bumper and the radiator even with your cab? A. Not quite.

"Q. It never quite got there. Then when you saw that there was going to be a collision you *pulled off as far as you could, is that right?* A. That is right.

"Q. And the driver of the Phoenix equipment (defendant's equipment) checked his speed and droppd back some? A. He tried to drop back, yes. He dropped back nearly the length of my semi.

"Q. How were you able to watch that? A. All I had to do was look in the rear-view mirror and watch it. I could see both of them at the same time. The rear-view mirror makes the spot on the other truck coming down the hill, and naturally I was praying that something would happen to take something out of there because *there wasn't room in that cut* for three rigs.

"Q. *It was too narrow?* A. Oh, yes. I had done all I could when I seen he was dropping back, and I could not pick any more speed. I had the motor wound up then and pulled to the right as far as I could. That was all I could do. *The rest of it was just to stay there and watch it.*

"Q. As I understood it, the impact occurred approximately where with respect to your cab? A. Well, in the vicinity of my axles of my trailer wheels.

"Q. Your front axles? A. Back.

"Q. Back. In other words, he had dropped back to about the tail end of your truck? A. That is right." (Emphasis supplied.)

At the close of plaintiff's case, defendant moved for judgment upon the ground that plaintiff's evidence disclosed contributory negligence, and there could be no recovery. This motion was predicated on defendant's statement that it would not offer any evidence with respect to the accident. The case was tried by the court *without a jury.*

The court made the following findings:
"1.
"2.
"3.
"4.

"5. That the motor vehicle of defendant was then and there operated negligently in that said defendant attempted to drive the same around a motor vehicle proceeding in the same direction as the said motor vehicle was ascending the hill, and at a time when the operator thereof could not see ahead to ascertain if such movement from a direct line of travel could be made in safety; that at the time of the collision hereinafter found, the said equipment of defendant was upon its wrong side of the highway, and that the negligence of the defendant was one of the proximate causes of the collision hereinafter described.

"6. That as the motor vehicle of the plaintiff approached the place of the collision hereinafter described, the operator thereof drove and operated the same negligently in that said motor vehicle was then and there a truck and trailer, which said truck and trailer was then and there operated in excess of the lawful rate of speed of 20 miles per hour, to-wit: was being operated at a speed approximately 35 miles per hour, and in that the operator thereof was driving said motor vehicle at a speed greater than would permit him to bring the same to a stop within the range of his vision ahead.

"7. That if the said plaintiff's motor vehicle and equipment had been operated lawfully and carefully, the operator thereof would have been able to stop the same and avoid the collision hereinafter described; that the negligence of the operator of plaintiff's equipment and the operator of the defendant's equipment contributed to causing the accident and the damages of plaintiff and the damages of defendant; that immediately prior to the collision, hereinafter described, the operator of defendant's equip-

ment had slowed the same and was·attempting to return to his lawful side of the highway, and said defendant's equipment would have been back on its lawful side of the highway prior to the collision hereinafter found if said plaintiff's equipment had been then and there operated at a lawful rate of speed."

Conclusions of law were made following the findings of fact, and judgment was rendered for defendant, dismissing plaintiff's cause of action from which plaintiff has appealed.

▌Defendant earnestly contends that the lower court had ample evidence to support its findings that the proximate cause of the collision was contributed to by plaintiff's speed coupled with the inability to stop the truck within his range of vision, and that, therefore, this court is bound by these findings. Plaintiff has assigned as error the rendering of judgment for defendant "for the reason and upon the ground that the uncontradicted evidence shows that the defendant was guilty of wilful and wanton negligence." His proposition of law in support of this assignment is to the effect that a defendant guilty of willful and wanton negligence cannot avail himself of the plea of contributory negligence except where plaintiff, knowing of defendant's reckless misconduct and the danger involved to him therein, recklessly exposes himself thereto. It is the position of defendant that there was no evidence introduced in the lower court to warrant and justify a finding of willful and wanton negligence on his part. We believe that the bare recitation of the facts emphatically refutes this contention. Defendant's driver was not only guilty of violating the statute relative to overtaking and passing a preceding vehicle, but he did it in a manner demonstrating reckless disregard for the safety of others, knowing or having reason to know that a reasonable man would realize that his conduct not only created an unreasonable risk of bodily harm to others but also involved a high degree of probability that substantial harm would result to others. The conduct of defendant's truck driver falls squarely within the definition of wanton or willful misconduct as set forth in the Restatement of the Law, Torts, vol. II, § 500, which reads as follows: "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

Our statute relative to overtaking and passing, prior to the 1945 amendment, Ch. 24, Laws 1945, S.S. read as follows

"Sec. 66-108. Limitation on overtaking and passing. The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing an-

other vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety, and shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of one hundred and fifty (150) feet, nor at any steam or electric railway grade crossing, nor at any intersection of highways unless permitted so to do by a traffic or police officer.

"Vehicles passing each other in opposite directions have the right of way and no other vehicle to the rear of either of such two vehicles shall pass or attempt to pass such two vehicles unless there is sufficient space for the vehicle to the rear to remain upon the right half of the highway in overtaking and passing the vehicles ahead."

Defendant's truck driver not only violated this section but he was guilty of wanton and reckless conduct even in the absence of such statute. We feel that the uncontradicted facts show that defendant's driver was demonstrating a reckless disregard for himself and for the safety of others in attempting to pass another truck upon ascending a grade on an S-curve near the crest of the hill at a point where he could not see that the move could be made in safety. We are thoroughly convinced that a reasonable man under those circumstances would have anticipated that another vehicle might be approaching from the opposite side of the hill and would not have attempted to pass until his view was to unobstructed that he could have assumed that his passing could be executed in safety.

■ Plaintiff's contributory negligence does not bar a recovery by him in view of defendant's reckless disregard for plaintiff's safety. If the defendant was guilty of willful and wanton misconduct, he cannot avail himself of the defense of contributory negligence, except where plaintiff, knowing of defendant's reckless misconduct and the danger involved to him therein, recklessly exposes himself thereto. This court has had occasion heretofore to consider the law herein involved in the case of Southern Pacific R. Co. v. Svensden, 13 Ariz. 111, 108 P. 262, 264. We said: "* * * The doctrine of contributory negligence, however, has no application in cases of aggressive acts, resulting in wanton or willful injury. 'The doctrine that contributory negligence will defeat recovery has no application where the injury is the result of the willful, wanton, reckless conduct of defendant.' 29 Cyc. 509."

This rule was again cited and approved in Lutfy et al. v. Lockhart, 37 Ariz. 488, 295 P. 976, 978, wherein we stated: "* * * If the evidence showed defendant operated the automobile in a willful or wanton manner, under the rule announced in Southern Pacific R. Co. v. Svensden, 13 Ariz. 111, 108

P. 262, contributory negligence would indeed be no defense."

The rule announced in these two cases was restated in the recent case of Womack v. Preach, 63 Ariz. 390, 163 P.2d 280. This statement is in conformity with the general law as set forth in the Restatement of the Law, Torts, vol. II, § 482, and the comment thereon, which reads as follows:

"(1) Except as stated in Subsection (2), a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety.

"(2) A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if, knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto.

"Comment:

"a. If the defendant's conduct amounts to reckless disregard of the plaintiff's safety as those words are defined in sec. 500, the plaintiff is not barred from recovery by any form of contributory negligence. He is not barred from recovery by his failure to exercise reasonable vigilance, although had he done so he would have discovered the *plaintiff's* (defendant's) reckless misconduct in time to have avoided harm therefrom. He is not barred from recovery by a failure to exercise reasonable care and competence after he knows of the defendant's reckless misconduct and realizes the dangers involved therein. The plaintiff is not barred even by that form of negligence which is called voluntary assumption of risk. In order that the plaintiff's conduct may bar him from recovery, it is necessary that he not only know of the defendant's reckless conduct but also realize the gravity of the risk involved therein so that he is not only unreasonable but reckless in exposing himself to it."

See note "Common Law Exceptions to the Defense of Contributory Negligence", 32 Columbia Law Review, 493–500.

We first took cognizance of the rule in the Svensden case, supra, and there approved it, but this was before the adoption of our constitutional provision relating to the defense of contributory negligence. So far as we have been able to discover no attempt has been made by this court to determine whether this rule is applicable or can exist when consideration is given to the constitutional provision referred to, being Section 5, Article 18. This provision reads: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury." This constitutional provision was under consideration in the case of Dennis v. Stukey, 37 Ariz. 299, 294 P. 276, 278. Therein appears the following:

"In Inspiration Consolidated Copper Co. v. Conwell, 21 Ariz. 480, 190 P. 88, we held that although the uncontradicted evidence showed plaintiff had assumed the risk, the

language quoted above clearly indicated that the power or duty finally and conclusively to settle the question of contributory negligence was transferred from the court to the jury as 'the sole arbiter of the existence or nonexistence of contributory negligence or assumption of risk in all actions for personal injuries,' and that the verdict was conclusive upon the court. Atchison, T. & S. F. R. Co. v. Spencer, 9 Cir., 20 F.2d 714.

"In Salt River Valley Water Users' Ass'n v. Berry, 31 Ariz. 39, 250 P. 356, 358, we said:

· " 'It is settled beyond question in this jurisdiction that, if it appears that the plaintiff's injury was caused by concurring acts of negligence of plaintiff and defendant, the defendant is not entitled as a matter of law, to an instructed verdict but the question is one of fact to be passed upon by the jury. Under the common law, if plaintiff's negligence entered into and formed part of the efficient or proximate cause of the injury, it defeated his right of action. Now, it does not, except upon the say-so of the jury. Clearly and unmistakably this power has been given to the jury; and that it violates no constitutional right has been decided by this court, by the Oklahoma courts, whose constitutional provision is the same as ours, and by the Supreme Court of the United States. Dickinson v. Cole, 74 Okl. 79, 177 P. 570; Chicago, R. I. & P. R. Co. v. Cole, 251 U.S. 54, 40 S.Ct. 68, 64 L.Ed. 133.' "

Again treating this provision, this court in Campbell v. English, 56 Ariz. 549, 110 P.2d 219, 221, said: "We have passed upon the meaning and effect of this constitutional provision in innumerable cases and have held, in effect, that when the issue is one of contributory negligence, that is to say, when there is evidence from which a jury could find, under the rules above set forth, that the defendant was guilty of negligence, and one of the defenses is that plaintiff also was guilty of negligence, the constitution takes away from either the trial or appellate court the right to determine whether, as a matter of either *law or fact,* the evidence shows such contributory negligence to exist, and leaves the question both of law and fact on that particular issue to the decision of the jury. Dennis v. Stukey, supra; Inspiration Cons. Copper Co. v. Conwell, 21 Ariz. 480, 190 P. 88; Herzberg v. White, 49 Ariz. 313, 66 P.2d 253. If the record in this case had been such as to permit the trial court to hold that there was no evidence whatever which would sustain a verdict that the defendant was guilty of any negligence which was a proximate cause of the accident, then it would have been justified in instructing a verdict in favor of defendant. But when, as in the present case, there is undoubtedly evidence from which a jury might properly infer that defendant was guilty of such negligence, then the question of whether plaintiff also was guilty of negligence becomes one, not of sole negligence of plaintiff, but of his contributory negligence, and that question must be left to the jury." (Emphasis supplied.) .

We have purposely set forth at length the portions of the foregoing decisions so that we may have them well in mind. We desire now to direct particular attention to the language of the constitutional provision. It provides "The *defense* of contributory negligence or of assumption of risk shall, *in all cases whatsoever,* be a question of fact and shall, at all times, be left to the jury." (Emphasis supplied.) From the foregoing synopses of the decisions of this court, it will be observed that this constitutional provision has always been given effect where the legal defense of contributory negligence existed. The question is: Is contributory negligence a legal defense where the defendant has been guilty of wanton misconduct or recklessness that falls within the generally designated term "wanton negligence"? Does the phrase "in all cases whatsoever" in the constitutional provision include cases where the defendant is guilty of wanton negligence? It may be said that this phrase "in all cases whatsoever" is broad enough to be interpreted to include the defense of contributory negligence in a fact situation of intentional injury or injuries resulting from wanton misconduct or recklessness tantamount thereto. Though susceptible of this interpretation we do not feel that it should be so interpreted or extended. Having in mind the reasons prompting the adoption of this constitutional provision, we still believe that it was not the intention of the makers of the Constitution to grant to juries the sole right and privilege to find not only the facts but to declare the law in actions for personal injury where the defendant was guilty of intentional injury or willful misconduct.

At common law the defense of contributory negligence was not available in cases of willful misconduct or wanton negligence. The clearest and most forceful expression of the rules and principles applicable to this kind of liability that we have been able to discover is to be found in the reported case of Aiken v. Holyoke St. R. Co., 184 Mass. 269, 68 N.E. 238, 239. We approvingly quote therefrom as follows: "* * * It is familiar law that, in the absence of a statutory provision, mere negligence, whatever its degree, if it does not include culpability different in kind from that of ordinary negligence, does not create a liability in favor of one injured by it, if his own negligence contributes to his injury. It is equally true that one who willfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury. The difference in rules applicable to the two classes of cases results from the difference in the nature of the conduct of the wrongdoers in the two kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a willful, intentional wrong. His conduct is criminal or quasi criminal. If it results in the death of the injured person, he is guilty of

manslaughter. Commonwealth v. Pierce 138 Mass. 165, 52 Am.Rep. 264; Commonwealth v. Hartwell, 128 Mass. 415, 35 Am.Rep. 391. The law is regardful of human life and personal safety, and, if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a willful and intentional wrong. It is no defense to a charge of manslaughter for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim. In these cases of personal injury there is a constructive intention as to the consequences, which entering into the willful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence becomes, by reason of a reckless disregard of probable consequences, a willful wrong. That this constructive intention to do an injury in such cases will be imputed in the absence of an actual intent to harm a particular person is recognized as an elementary principle in criminal law. It is also recognized in civil actions for recklessly and wantonly injuring others by carelessness. Palmer v. Chicago, St. L. & P. Railroad Co., 112 Ind. 250, 14 N.E. 70; Shumacher v. St. Louis & Santa Fe Railroad Co., C.C., 39 F. 174; Brannen v. Kokomo, G. & J. Gravel Road Co., 115 Ind. 115, 17 N.E. 202, 7 Am.St.Rep. 411. In an action to recover damages for an assault and battery it would be illogical and absurd to allow as a defense proof that the plaintiff did not use proper care to avert the blow. See Sanford v. Eighth Avenue Railroad Company, 23 N.Y. 343–346, 80 Am. Dec. 286. It would be hardly less so to allow a similar defense where a different kind of injury was wantonly and recklessly inflicted. A reason for the rule is the fact that, if a willful, intentional wrong is shown to be the direct and proximate cause of an injury, it is hardly conceivable that any lack of care on the part of the injured person could so concur with the wrong as also to be a direct and proximate contributing cause to the injury. It might be a condition without which the injury could not be inflicted. See Newcomb v. Boston Protective Department, 146 Mass. 596, 16 N.E. 555, 4 Am.St.Rep. 354. It might be a remote cause, but it hardly could be a cause acting directly and proximately with the intentional wrongful act of the offender. Judson v. Great Northern Railway Company, 63 Minn. 248–255, 65 N.W. 447. The offense supposed is different in kind from the plaintiff's lack of ordinary care. It is criminal or quasi criminal. Not only is it difficult to conceive of a plaintiff's negligence as being another direct and proximate cause foreign to the first, yet acting directly with it, but it would be unjust to allow one to relieve himself from the direct consequences of a willful wrong by showing that a mere lack of due care in another contributed to the result. The reasons for the rule as to the plaintiff's care in actions for ordinary negligence are wanting, and at the same time the facts make the rule impossible of application. The general rule that the plaintiff's

failure to exercise ordinary care for his safety is not a good defense to an action for wanton and willful injury caused by a reckless omission of duty, has been recognized in many decisions, as well as by the writers of text-books. (Citing cases.) We have been referred to no case in which it is held that it makes any difference whether the plaintiff's lack of ordinary care is only previous to the defendant's wrong, and continuing to the time of it, or whether there is such a lack after the wrong begins to take effect. It is difficult to see how there can be any difference in principle between the two cases. In this commonwealth, as in most other jurisdictions, liability does not depend upon which of different causes contributing to an injury is latest in the time of its origin, but upon which is the direct, active, efficient cause, as distinguished from a remote cause, in producing the result.

"There are expressions in some of the cases which imply the possibility of contributory negligence on the part of the plaintiff in a case of a wanton and reckless injury by a defendant. If there is a conceivable case in which a plaintiff's want of due care may directly and proximately contribute as a cause of an injury inflicted directly and proximately by the willful wrong of another, such a want of care must be something different from the mere want of ordinary care to avoid an injury coming in a usual way. There is nothing to indicate the existence of peculiar conditions of this kind in the present case. Conduct of a plaintiff which would be negligence precluding recovery if the injury were caused by ordinary negligence of a defendant will not commonly preclude recovery if the injury is inflicted willfully through wanton carelessness. This is illustrated by the former decision in this case and by many others." (Citing cases.)

■■ The constitutional provision was not enacted for the purpose of changing the common law as to the application of the doctrine. Its evident purpose was to modify the common law by making the jury, rather than the court, the sole arbiter of the existence or nonexistence of contributory negligence. Inspiration Consol. Copper Co. v. Conwell, 21 Ariz. 480, 190 P. 88; Davis v. Boggs, 22 Ariz. 497, 199 P. 116; Varela v. Reid, 23 Ariz. 414, 204 P. 1017; Morenci Southern R. Co. v. Monsour, 24 Ariz. 49, 206 P. 589; Pacific Const. Co. v. Cochran, 29 Ariz. 554, 243 P. 405. See also Herron v. Southern Pac. Co., 283 U.S. 91, 51 S.Ct. 383, 75 L.Ed. 857. We conclude that the defense of contributory negligence is not a defense in law to bar recovery for injuries inflicted by intentional or willful misconduct or wanton negligence.

■ If the facts in the instant case disclosed a simple negligence only on the part of defendant, then in that event we would be bound by findings of the trier of the facts on contributory negligence under the constitutional provision referred to. We are of the opinion that the trial court treated the acts and conduct of defendant as constituting merely simple negligence. We

have already indicated that we are of the opinion that the trial court in this behalf was in error and that the acts of defendant constituted willful misconduct or wanton negligence. Having reached this conclusion we are privileged to examine the evidence to determine whether or not the evidence sustains the finding of the trial court to the effect that the negligence of plaintiff was a contributing factor to the accident and constituted a part of the efficient or proximate cause thereof.

Plaintiff's negligence under the findings of the trial court consisted *first* in driving his truck at a speed in excess of that specified in the statute, namely, a speed of about 35 miles per hour. Our code section regulating the speed of motor vehicles is 66-103, A.C.A.1939, which provides that "It shall be unlawful for the driver of a motor truck towing a trailer or semi-trailer to drive the same at a speed in excess of twenty (20) miles per hour upon any public highway." A violation of this statute (Rep. Ch. 11, S.L.1945) is not negligence per se. It is the law of this jurisdiction that driving in excess of the speed limit does not in and of itself constitute negligence per se. McIver v. Allen, 33 Ariz. 28, 262 P. 5. Exceeding the speed limit is not negligence as a matter of law but may be as a matter of fact if it proximately causes or contributes to an accident. *Secondly,* the court, following its finding of fact, concluded that the defendant was guilty of negligence as a matter of law in driving his truck at such a rate of speed that he could not stop within the range of his vision before colliding with the plaintiff. This is the definite, specific, and absolute rule announced in Dennis v. Stukey, supra. In Coe v. Hough, 42 Ariz. 293, 25 P.2d 547, 550, this court said that it declined to recede from this hard and fast rule. Nevertheless these underscored qualifying words appear in the opinion: " * * If an autoist cannot see where he is going he should stop. If his vision is limited he should have such control of his car as to be able to stop within the radius of his vision. If he violates these reasonable and sane rules and runs into someone *who is at the time exercising reasonable care,* he is, we think, guilty of legal negligence." (Emphasis ours.)

This rule was reaffirmed in Campbell v. English, supra. To say the least, the rule as first announced is somewhat equivocal. The first two sentences are definite and absolute. The last sentence contains these qualifying words "who is at the time exercising reasonable care." The absolute rule of "drive within the radius of your lights" is supposed to have been first announced in Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N.W. 629, 25. L.R.A.,N.S., 40, 135 Am. St.Rep. 30. The supreme court of Washington in Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 160, 58 A.L.R. 1482, examined the doctrine as set forth in the Wisconsin case, supra. Its observation is as follows: "We seriously doubt whether this case, which is the leading one, supports the rule contended for. If this opinion means

that one driving an automobile at night must, under all circumstances, see any object in the road in front of him which comes within the radius of his lights, and be able, under all circumstances, to stop his car before striking the object, then we are unable to agree with it. On the contrary, if it holds that he must see any object which an ordinarily prudent driver under like circumstances would have seen, then we think it states the law correctly."

In analyzing the rule, the Washington court made the following observations: "The rule contended for is, in our opinion entirely too broad, and, if put in effect, would have very serious and unjust results. It loses sight of the fact that one driving at night has, at least, some right to assume that the road ahead of him is safe for travel, unless dangers therein are indicated by the presence of red lights; it does not take into consideration the fact that visibility is different in different atmospheres, and that at one time an object may appear to be 100 feet away, while at another time it will seem to be but half that distance; it fails to consider the honest error of judgment common to all men, particularly in judging distances at night; it loses sight of the fact that the law imposes the duty on all autos traveling at night to carry a red rear light and the duty on all persons who places obstructions on the road to give warning by red lights or otherwise; it fails to take into consideration the glaring headlights of others and the density of the traffic and other like things which may require

the instant attention of the driver; it does not take into consideration that a driver at night is looking for a red light to warn him of danger, and not for a dark and unlighted auto or other obstruction in the road.

"We believe that, generally speaking, where the statutes or the decisions of the courts require red lights as a warning of danger on any object in the highway and such lights are not present, it is a question for the jury to determine whether the driver at night should have seen the obstruction, notwithstanding the absence of red lights. In this day when the roads are crowded with automobiles, a red light is at once recognized as a signal for danger and therefore for cautious driving, but the absence of a red light, where the statutes or the decisions of the court require them, amounts to an implied invitation to travel the road in the usual manner. In many portions of this state, fogs are frequent—fogs so thick that the driver of an automobile cannot, by means of his headlights, clearly distinquish an object 5 feet in front of him. Must he stop on the road? If so, all others must do the same, and thus all traffic must cease. And in the process of stopping and blocking the road, many collisions must occur. A rule that will force this condition is a dangerous one and must do infinitely more harm than good.

"To hold that one is, as a matter of law guilty of contributory negligence in not, under all circumstances, seeing whatever his lights may disclose, would be to practically nullify the statutes which require red lights

to be carried upon automobiles and to be placed upon obstructions in the streets or roads; or, at least, to encourage travelers on the roads, or those placing obstructions therein, not to comply with the law in those respects, for, under the rule contended for, a disobedience of the law with regard to red lights would not entail any evil consequences."

This court in Coe v. Hough, supra, examined the Morehouse case, supra, and recognized that the Washington court refused to follow the rule in its broadest implications, " and for a sufficient reason it seems to us under the circumstances. * * * It seems to us that the facts may be said to place the case as an exception to the rule, rather than a rejection thereof." The defendant in the Morehouse case had permitted a building that was being moved to be left overnight in a regularly traveled paved street. The building extended practically from curb to curb, and on each corner of it was placed a red warning light, but no warning light in the intervening space of 40 feet. Traveling in the center of the street, plaintiff collided with the building and was killed. By reason of fog, plaintiff's vision was obscured to some extent. The court held that deceased was not negligent as a matter of law because he could not stop his automobile within the radius of his vision. Our court recognized the injustice of the rule if applied to the facts of the Morehouse case, but observed that the holding there was just under the circumstances and an exception to the rule.

If we are to adhere to the rule we feel that we would be compelled under the facts in the instant case to hold that they are within an exception to the rule. A person traveling upon a highway, ascending a hill, on a curve and through a cut, is not presumed to anticipate that a vehicle ascending the hill from the opposite direction will be traveling on its wrong side of the road especially where the law prohibits the passing of another vehicle on a curve at or near the crest of a hill. Recourse to ordinary common sense would counsel a person not to drive on the wrong side of the highway in a cut with vision obscured and nowhere to go if an oncoming vehicle should approach, which might be reasonably expected, and whose presence could not be said to be a fortuitous event. The defendant could have been no more guilty if he had intentionally parked his car and trailer across the highway in the cut to bar passage completely. Plaintiff was not presumed to anticipate such conduct on the part of a motorist using the highway. Under these circumstances the court cannot say as a matter of law that plaintiff was bound to anticipate the presence of defendant in the position where he was and stop within the vision of his lights. The rule if treated as absolute in all its implications would result in more harm than good. To prevent gross injustice in many circumstances would require the continual recognition of exceptional situations within the rule as heretofore stated. Each case must be considered in the light of its own peculiar state of facts and cir-

cumstances. We believe the just test to be: What would an ordinary prudent person have done under the circimstances as they then appeared to exist? Murphy v. Hawthorne, 117 Or. 319, 244 P. 79, 44 A.L.R. 1397, and annotation at page 1403 under title of "Driving automobile at a speed which prevents stopping within length of vision as negligence."

We are thoroughly satisfied that the facts are that defendant was guilty of willful and wanton misconduct; that the accident would not have occurred but for such conduct; and that the plaintiff's want of due care, if any, did not directly and proximately contribute to his injuries, and at most was a remote cause. Conduct of a plaintiff which would not be negligence precluding recovery if the injury were caused by ordinary negligence of a defendant will not commonly preclude recovery if the injury is inflicted willfully through wanton carelessness. Such is the fact situation in the instant case.

At the close of plaintiff's case, defendant moved for judgment against plaintiff, which motion was taken under advisement. Defendant at this point reserved its rights to go into the matter of damages and offer evidence in that regard if it became necessary.

The judgment of the trial court is reversed with instructions to enter judgment for plaintiff in accordance with the proofs offered and to be offered on the element of damages and to permit defendant to introduce evidence thereon.

STANFORD, C. J., and MORGAN, J., concur.