PAZAN *v.* UNEMPLOYMENT COMPENSATION COMMISSION.

UNEMPLOYMENT COMPENSATION—OWNERS OF LEASED TRUCKS—INDE-
PENDENT CONTRACTORS.

Truck owners who leased trucks to plaintiff, engaged in trucking
business, under leases cancelable by either party on 15 days'
notice, and under which the owner could either drive the truck
himself or furnish a driver, but had to service, supply and
repair the truck and could haul for plaintiff on routes of
their own choosing in return for 75% of the total tariff,
and sometimes hauled loads for others than plaintiff and
even refused to haul for him if the load were not sufficiently
lucrative, *held*, independent contractors under the unemploy-
ment compensation act, notwithstanding plaintiff carried work-
men's compensation insurance covering such owners and had
a contract with a union under which they had certain privileges,
including seniority rights as drivers, over some employees driv-
ing plaintiff's own equipment (26 USC [1952 ed], chapter 9,
subchapter C, §§ 1600–1611; CL 1948, § 421.42[1], [6] [n].

SMITH, J., dissenting.

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted June 14, 1955. (Docket No. 13, Calendar No.
46,385.) Decided December 1, 1955.

Certiorari by Arthur Pazan, doing business as
Pazan Motor Freight, against Michigan Unemploy-
ment Compensation Commission and the appeal

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance and Re-
tirement Funds §§ 17, 19.
[1] One who uses his own truck as an independent contractor or
an employee of concern for which he transports goods, within
social security or unemployment compensation act. 144 ALR
740; 151 ALR 1331.

board thereof to review rulings on plaintiff's liability on basis of whether drivers of leased equipment were employees or contractors. Tommy Deskin, claimant for compensation, intervened. Judgment for plaintiff. Defendants appeal. Intervening claimant cross-appeals. Affirmed.

*Robert A. Sullivan* (*Sullivan, Eames & Moody,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *John J. Long,* Assistant Attorney General, for defendants.

*Zwerdling, Zwerdling, Keith & Livingston* (*Morris Zwerdling,* of counsel), for intervening claimant.

DETHMERS, J. Presented is the question of plaintiff's liability as an employer for the year 1949 under the Michigan unemployment compensation act (CL 1948, § 421.1 *et seq.* [Stat Ann 1950 Rev § 17.501 *et seq.*]). The answer turns on whether certain owner-operators of trucks were plaintiff's employees or independent contractors.

Plaintiff was in the trucking business, hauling goods for hire under Michigan public service commission certificates. He owned trucks which were operated by his employees. In addition, he leased from the owners trucks which were operated by them in furtherance of his business. The typical written lease provided that plaintiff should have complete control of the leased truck and assume all legal liabilities arising from its operation the same as though it were owned by him and that, if operated by the. owner, the latter should be deemed to be plaintiff's employee. The lease was cancelable by either party on 15 days' notice. Under the arrangement the owner could, at his option, drive the truck

himself or furnish a driver; and plaintiff paid the owner for every load hauled 75% of the gross tariff received for the haul. The lease was silent with respect to the other material details of the arrangement, but the understanding and practice followed was that plaintiff told the owners where to pick up freight and where to deliver it, but did not dictate routes to be followed, and the owners kept the trucks serviced, repaired and supplied with gasoline, oil, tires and everything necessary to their operation at their own expense and at places or service stations of their own choosing. Plaintiff paid the 75% of the total tariff for a haul to the owner, sometimes by 1 check and sometimes by 2, the smaller of the 2 usually amounting to 20% or 25% of the total paid the owner and being reported as wages for social security purposes and social security and income tax deductions being made therefrom. Plaintiff carried workmen's compensation insurance covering the owners and had a contract with a union under which they had certain privileges, including seniority rights as drivers over some employees driving plaintiff's own equipment. Occasionally the owners leased their trucks to and hauled loads for others than plaintiff, and sometimes they refused to make hauls for plaintiff which they did not consider sufficiently lucrative. The owners performed no service for plaintiff other than driving their own trucks. The trucks bore signs indicating that they were operating in plaintiff's business.

This case has come the route through determinations by the commission, referee and appeal board and is here on appeal from a circuit court judgment based on its holding that the owners were not plaintiff's employees under the act.

In defining "employment," section 42(1) of the Michigan act in effect in 1949 (CL 1948, § 421.42* [Stat Ann 1950 Rev § 17.545]) read, in part:

"Service, including service in interstate commerce, performed for remuneration or under any contract of hire, written or oral, express or implied."

Section 42(6) read, in part:

"Except as otherwise provided * * * the term 'employment' shall not include: * * *

"(n) Any service not included as 'employment' under the Federal unemployment tax act (secs. 1600–1611 of the internal revenue code), as amended."†

In *Bonifas-Gorman Lumber Co.* v. *Unemployment Compensation Commission,* 313 Mich 363, the service involved, namely logging, was specifically exempt under the Michigan act unless included as employment under title 9 of the Federal social security act. With respect to that service, this Court said in *Bonifas* (p 369) that :

"Clearly, it was the intention of the legislature to exclude from the benefits of the statute persons rendering services of the character referred to (logging) unless such persons are entitled to be classed as employees under the social security act."

The distinction between the situation in which the service is one expressly exempted under the State act unless included as employment under the Federal act, as in *Bonifas,* and a situation in which the service is one, so defendants claim here, that is included under the State act unless expressly exempted by the Federal act, scarcely seems controlling. Section 42(6)(n) speaks not merely in terms of exempting services which are expressly exempted under the

---

* This section was amended by PA 1949, No 282, effective June 11, 1949, but the quoted language was not changed.—REPORTER.

† Title 26 USC (1952 ed), chapter 9, subchapter C, §§ 1600–1611.—REPORTER.

Federal act, but of excluding services which are not included as employment under the Federal act.

Is the service in question included as employment under the Federal act in effect in 1939 when section 42(6)(n) of the Michigan act was enacted? We think that question is answered in *United States* v. *Silk* (*Harrison* v. *Greyvan Lines, Inc.*), 331 US 704 (67 S Ct 1463, 91 L ed 1757). For similarity of facts with respect to the truck owner-operators in the instant case, and in the *Silk* and *Greyvan Cases,* see opinion therein. The Court there held the owner-operators to be independent contractors, not in employment under the Federal act.

Defendants point to factual differences between those cases and this and seek to distinguish on that ground. While it may be said that there are indicia of the employer-employee relationship in the case at bar not present in *Silk* and *Greyvan,* the converse is equally true. We do not think the factual differences controlling of the legal conclusion to be drawn. Decision in *Silk* and *Greyvan* appears to have turned on considerations expressed by the court therein as follows (pp 713-716, 719):

" 'Employees' included workers who were such as a matter of economic reality.  *  *  *  The taxpayer must be an 'employer' and the man who receives wages an 'employee.'  *  *  *  Contracts, however 'skilfully devised,' *Lucas* v. *Earl,* 281 US 111, 115 (50 S Ct 241, 74 L ed 731), should not be permitted to shift tax liability as definitely fixed by the statutes.  *  *  *  The courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision.  No one is controlling nor is the list complete.  *  *  *  The truckmen hire their own assistants, own their trucks, pay their own expenses, with minor exceptions, and depend upon their own initiative, judgment and energy for a large part of their

success.  *  *  *  Where the arrangements leave the driver-owners so much responsibility for investment and management as here, they must be held to be independent contractors.  These driver-owners are small businessmen.  They own their own trucks. They hire their own helpers.  In one instance they haul for a single business, in the other for any customer.  The distinction, though important, is not controlling.  It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors."

Application of the quoted language to the facts at bar impels us to the conclusion that the owner-operators were independent contractors whose service was not included as employment under the Federal act.

Affirmed, with costs to plaintiff.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, and KELLY, JJ., concurred with DETHMERS, J.

SMITH, J. (*dissenting*).  We have presented to us in this case one of the most notorious of the contemporary legal puzzles, namely, whether or not one rendering a service for another is an independent contractor or an employee.  I would not dispose of it in this Court, as would my Brother.  It should go back to the triers of the facts for further determination in the light of what is herein contained.

We are, for the reasons noted by my Brother, remitted to the Federal law in effect in 1939.  We need not grope for guidance by analogy.  The United States supreme court examined our problem and ruled thereon in *United States* v. *Silk* (*Harrison* v. *Greyvan Lines, Inc.*), 331 US 704 (67 S Ct 1463, 91 L ed 1757).  It remains for us only to apply the rule of that decision to the case at bar.

As a background for the understanding of what the supreme court did in these cases, it is necessary to understand that for years the determination of whether one was an independent contractor or a mere employee turned on the matter of control. Such was the test. If the man purchasing the service "controlled" the one rendering it, the latter was an employee. This is not the occasion to review the deficiencies of the test. Suffice to say it was, and is, ambiguous, uncertain, and slippery, because, in part, under modern industrial conditions the master no longer works elbow to elbow with the servant, actually controlling his movements. Nowadays the control is usually "constructive." Hence, the question arises and persists: Is control so indirect and elusive as to be deemed only "constructive," still to be regarded as "control" in any real sense? The cases here divide and redivide. With respect to the tort cases the control test had at least an element of plausibility. It involved the idea of direction, of command, and it was not unreasonable that one who commanded a tort should respond in damages therefor. So, in general, ran the thinking of the formulating courts.

But this case does not involve a tort. It involves the problem of unemployment. What does control have to do with unemployment? With this question unanswered, we will proceed to the *Silk* and *Harrison Cases*.

Each of these cases involved owner-operators who had leased their trucks, and their services, to another. In that respect they parallel the case at bar. In each the question was whether the owner-operator so leased was an employee or an independent contractor. In answering this question the lower Federal courts (as did the appeal board and the referee in the case at bar) leaned heavily upon the control test, apparently regarding it as conclusive. This was found to be error on the facts presented to the su-

preme court, but, since facts inevitably differ, it is not the ultimate finding but the reasoning of the court in reaching its holding with which we are concerned.

The reasons for the passage of the act were clearly set forth by the court (p 710):

"The social security act of 1935 was the result of long consideration by the President and Congress of the evil of the burdens that rest upon large numbers of our people because of the insecurities of modern life, particularly old age and unemployment."

Equally clear, in the words of the court, are those to be protected by the statutory coverage (pp 711, 712):

"The very specificity of the exemptions, however, and the generality of the employment definitions indicates that the terms 'employment' and 'employee,' are to be construed to accomplish the purposes of the legislation. As the Federal social security legislation is an attack on recognized evils in our national economy, a constricted interpretation of the phrasing by the courts would not comport with its purpose. Such an interpretation would only make for a continuance, to a considerable degree, of the difficulties for which the remedy was devised and would invite adroit schemes by some employers and employees to avoid the immediate burdens at the expense of the benefits sought by the legislation. These considerations have heretofore guided our construction of the act."

The court then addressed itself to our precise problem, the differentiation between the employee and the independent contractor, speaking as follows (p 713):

"The problem of differentiating between employee and an independent contractor, or between an agent and an independent contractor, has given difficulty

through the years before social legislation multiplied its importance. When the matter arose in the administration of the national labor relations act, we pointed out that the legal standards to fix responsibility for acts of servants, employees or agents had not been reduced to such certainty that it could be said there was 'some simple, uniform and easily applicable test.' The word 'employee,' we said, was not there used as a word of art, and its content in its context was a Federal problem to be construed 'in the light of the mischief to be corrected and the end to be attained.' We concluded that, since that end was the elimination of labor disputes and industrial strife, 'employees' included workers who were such as a matter of economic reality. The aim of the act was to remedy the inequality of bargaining power in controversies over wages, hours and working conditions. We rejected the test of the 'technical concepts pertinent to an employer's legal responsibility to third persons for acts of his servants.' This is often referred to as power of control, whether exercised or not, over the manner of performing service to the industry. 1 Restatement, Agency, § 220."

It is indisputable that in its consideration of "economic realities" as determinative of employees' status the court is placing emphasis upon the idea of the (relatively) distinct economic enterprise. This is not to imply that differentiations and distinctions can be made only between different industries. The court is careful to observe that parts of a process may in reality be lodged in the hands of independent contractors (p 714):

"Few businesses are so completely integrated that they can themselves produce the raw material, manufacture and distribute the finished product to the ultimate consumer without assistance from independent contractors. The social security act was drawn with this industrial situation as a part of the surroundings in which it was to be enforced. Where

a part of an industrial process is in the hands of independent contractors, they are the ones who should pay the social security taxes."

But the point made is one of dependence or independence as a matter of economic reality. This is clear from *Bartels* v. *Birmingham, Collector of Internal Revenue* (*Greer* v. *Same*), 332 US 126, 130 (67 S Ct 1547, 91 L ed 1947, 172 ALR 317), which contains a summary of the test applied in the *Silk* and *Harrison Cases,* phrased in the words of Mr. Justice REED, who had written for the Court in the latter cases:

"In *United States* v. *Silk, supra,* we held that the relationship of employer-employee, which determines the liability for employment taxes under the social security act, was not to be determined solely by the idea of control which an alleged employer may or could exercise over the details of the service rendered to his business by the worker or workers. Obviously control is characteristically associated with the employer-employee relationship, but in the application of social legislation employees are those who as a matter of economic reality are dependent upon the business to which they render service. In *Silk,* we pointed out that permanency of the relation, the skill required, the investment in the facilities for work, and opportunities for profit or loss from the activities were also factors that should enter into judicial determination as to the coverage of the social security act. It is the total situation that controls. These standards are as important in the entertainment field as we have just said, in *Silk,* that they were in that of distribution and transportation."

In substance, then, the court held that one was an employee not because of control, or lack thereof, or because he did or did not employ his own means and methods in doing his work, but because of economic dependence, because he did his work "in the course

of the' employer's trade or business." 'The worker thus, in essence, followed "the usual path of an employee." (*Rutherford Food Corporation v. Mc-Comb, Wage and Hour Administrator,* 331 US 722, 729 [67 S Ct 1473, 91 L ed 1772].) Consequently his economic security was dependent upon the welfare of the owner's business and he was an "employee" for the purpose of this legislation.

The test derived, then, from the *Silk* and *Harrison Cases* is clear: Employees are those who as a matter of economic reality are dependent upon the business to which they render service. But it will not be taken as laboring the obvious, we assume, if we observe that these cases should not be regarded as furnishing an automatic answer in this type of situation. We are looking at economic dependence, or independence. It is significant that in the *Silk* opinion the court notes that (p 707) "they (those hired) may and did haul for others when they pleased." This has reference to those portions of the record in the United States supreme court, summarized in the words of the Tenth Circuit as follows:

"Frequently they haul coal for other dealers, haul grain, foodstuff, furniture, wood, rock, or any other material for other merchants or for private citizens of the community. This is done without interference or control by appellee over them in any way." *United States* v. *Silk,* 155 F2d 356, 357.

The hauler thus described, hauling for whomever he wished as a matter of right, offers marked contrast to the hauler in the case at bar. The agreement before us provides that Pazan should have "complete control" of the equipment involved. In addition the owner-operators had to conform to prescribed hours "of employment," they were not advertised or listed in "phone or directories as being in such business and available to the public generally," and, with

respect to driving for others and the penalties suffered therefor, if any, the testimony was confused and conflicting, ranging from "We try to get rid of them," to "We are very lenient and let them stay." There is much to support the conclusion that they are in fact, as they described themselves in their agreement, "employer" and "employee."

Error of law has thus come into the case, the wrong test of relationship having been applied. But it is not an error which we in this Court can correct because the facts necessary for an application of the proper test are not yet in the record. We have before us only the facts developed for the application of the discredited control test. As to what additional facts may be adduced to apply the test of economic dependence we have no way of knowing, since it will depend upon the degree of economic linkage existing between Pazan and the owner-operator. On that point we cannot assume that the record is now complete. It is utterly silent, for instance, as to the percentage of total income of the owner-operators which came from Pazan and the percentage from other sources, a factor which, while not controlling, would normally have a substantial degree of persuasion in determining whether the owner-operator is Pazan's employee or an independent businessman. The assertion of economic independence by one who is obligated to another's payroll for his every loaf of bread, every pair of shoes, and every payment on his car would ill comport with reality.

We undertake only a limited judicial review. *Mooney* v. *Unemployment Compensation Commission*, 336 Mich 344. There is ample statutory latitude below for the correction of error. Under the circumstances of this case, once we have indicated the basic criterion, it is the task of the agency to apply the proper legal standard to the necessary objective findings, a task confided to it by the legisla-

ture in the light of its expert competence in its specialized field.

In short, while I might feel on the record before us that the fortunes of the owner-operator are so inextricably linked to those of Arthur Pazan, doing business as Pazan Motor Freight, that he is within the category of those designed to be protected in event of economic disaster to Pazan, nevertheless I cannot predict that a full development of all pertinent facts required for the application of the proper test might not lead to the opposite conclusion.

Judgment of the circuit court should be reversed and the cause remanded to the circuit court with instruction to remand the matter to the employment security commission for further proceedings not inconsistent herewith.  No costs, a public question.