## SUN OIL COMPANY *v.* SEAMON.

AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—ASSURED CLEAR DISTANCE
—LINE OF 4 VEHICLES.

> Truck operator, fourth in line of westbound cars in 2 north lanes
> of 4-lane highway, *held,* not guilty of contributory negligence
> as a matter of law in colliding with third car which decelerated
> rapidly as both were in second lane from north when second
> car, driven by intoxicated defendant, crossed between first and
> third cars to south side of highway, then across all 4 lanes
> of highway in front of first and third cars but not colliding
> with either before reaching north ditch, such defendant not
> being absolved from liability for his own negligence by in-
> voking the assured clear distance ahead rule of the road where
> plaintiff's driver had no reason to anticipate action by de-
> fendant would create a dangerous situation (CLS 1954, § 257.-
> 627[a]).

DETHMERS, C. J., and SHARPE and CARR, JJ., dissenting.

Appeal from Livingston; Carland (Michael), J.
Submitted October 4, 1956. (Docket No. 34, Calen-
dar No. 46,903.)   Decided September 4, 1957.

Case by Sun Oil Company, a foreign corporation,
against George Seamon for property damage aris-
ing from multiple motor vehicle collision. Judgment
for plaintiff. Defendant appeals. Affirmed.

*Best & Falahee,* for plaintiff.

*Jennings, Fraser, Parsons & Trebilcock (Everett
R. Trebilcock,* of counsel), for defendant.

REFERENCES FOR POINTS IN HEADNOTES
5A Am Jur, Automobiles and Highway Traffic §§ 290–292.

DETHMERS, C. J. (*dissenting*). Four motor vehicles were proceeding west on the north lane of a 4-lane highway. At the time it was raining, the atmosphere was very wet and misty and the pavement was slippery. The first vehicle was traveling at about 20 miles per hour. Defendant's vehicle was second in line, traveling immediately behind the first. The third was going at about 40 to 45 miles per hour, overtaking the first 2. As it neared them it slowed down considerably. Plaintiff's vehicle, a tractor, semitrailer and 4-wheeled tanker weighing 80,000 pounds, being fourth in the line, was then 200 feet or less behind the third vehicle and traveling at from 30 to 35 miles per hour. When from 50 to 100 feet from the rear of the second vehicle the third turned into the second lane from the north, intent on passing the first 2 vehicles. Plaintiff's driver immediately followed the third vehicle in this maneuver, turning into the second lane from the north preparatory to passing the first 2 vehicles. At about this time and when the third vehicle was approximately 100 feet from the rear of the first, the second vehicle (defendant's) suddenly turned south from the north lane, crossed in front of the third vehicle, passing between it and the first, and went over the 2 south lanes onto the south shoulder, then cut back at a 45-degree angle in a northwesterly direction in front of the third and first vehicles, finally landing in the ditch north of the highway. It collided with none of the other vehicles. To avoid such collision drivers of both the first and the third vehicles applied brakes. The third slowed down to 1 or 2 miles per hour and, after defendant had passed in front of it the second time, it accelerated to about 5 miles per hour. Plaintiff's vehicle, at that time in the second lane from the north following the third vehicle, was 75 feet behind the latter when plaintiff's driver noticed braking action

and brake lights going on on the third vehicle. Plaintiff's driver immediately applied his brakes. He testified that it would have been impossible at the time, under the speed he was then traveling and all the conditions then and there existing, for him to have stopped his vehicle within the 75 feet intervening between it and the third vehicle and that he could not even say that it could have been stopped within 150 feet. The sudden attempt to stop caused plaintiff's vehicle to go out of control and swing into a broadside skid, after which it struck the rear of the third vehicle, which had already accelerated back to about 5 miles per hour following its slow-down to 1 or 2 miles per hour, as above noted.

It is for damages resulting from the collision between plaintiff's and the third vehicle that suit is brought. Trying the case without a jury, the lower court found for plaintiff. No question is raised about the negligence of defendant, who was driving while under the influence of intoxicating liquor. Defendant appeals on the ground that plaintiff's driver was guilty of contributory negligence as a matter of law for failure to comply with CLS 1954, § 257.627(a) (Stat Ann 1952 Rev § 9.2327[a]), which provides that, "no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured, clear distance ahead."

Defendant relies on *Winslow* v. *Veterans of Foreign Wars National Home,* 328 Mich 488; *Fugere* v. *Aronson,* 285 Mich 661; *Ter Haar* v. *Steele,* 330 Mich 167, for the propositions (1) that the statute applies with equal force to a driver, whether he be approaching a stationary object or overtaking one that is moving, and (2) that the measure of the assured, clear distance ahead of a vehicle overtaking another is the distance between them. He stresses the holding in *Lewis* v. *Yund,* 339 Mich 441, that failure to drive in accord with the requirements of

the statute constitutes contributory negligence as a matter of law.

Plaintiff, in turn, cites *Lindenfeld* v. *Michigan Interstate Truck Co.,* 274 Mich 681; *Torbert* v. *Smith's Estate,* 250 Mich 62; *Suarez* v. *Katon,* 299 Mich 38; *Kolehmainen* v. *E. E. Mills Trucking Co., Inc.,* 301 Mich 340, for the general proposition that when a plaintiff is confronted with a sudden emergency, not of his making but due to the negligence of defendant, which requires that plaintiff stop immediately to avoid a collision, he is not necessarily guilty of contributory negligence as a matter of law for failure to stop or to be able to stop before the collision occurs. In none of those cases is it made to appear that the driver in question failed to drive so as to be able to stop within the assured, clear distance ahead, but, rather, that his assured, clear distance ahead was suddenly shortened by the negligent act of another in unlawfully swerving into his path in a manner not reasonably to have been anticipated. The statute is not applicable to such cases. Distinguishable is the instant case, in which the third vehicle was lawfully traveling west in the second lane from the north, its turning into that lane having been neither sudden, negligent nor the proximate cause of the accident which resulted from plaintiff's driver following it too closely.

Plaintiff relies, in a measure, on *Weaver* v. *Motor Transit Management Co.,* 252 Mich 64. It should be said here, as it was in *Ter Haar* v. *Steele, supra* (p 172):

"The *Weaver Case, supra,* does not create an exception to the assured clear distance statute. In that case we held that PA 1919, No 236,* created a rebuttable presumption of negligence only. The assured clear distance statute was not construed."

---

* See PA 1949, No 300, § 402 (CLS 1954, § 257.402 [Stat Ann 1955 Cum Supp § 9.2102]).—REPORTER.

Plaintiff's chief reliance is on *Rossien* v. *Berry,* 305 Mich 693. Involved was a claim of error in the court's failure to instruct, as requested, that it is the duty of one operating a vehicle on a highway to so operate it as to be able to stop within the assured, clear distance ahead so that he may be able to avoid, and he must avoid, striking moving or stationary objects within the assured, clear distance ahead. It might well be urged that the requested instruction was not a correct statement of the law in that it failed to take account of situations in which the assured, clear distance ahead is suddenly and unexpectedly shortened by the unlawful invasion thereof by another. The holding in that case that the refusal to give the requested instruction was not error is unsupported in the opinion by reasoning. To the extent that that case might be deemed to hold that the mandate of the statute comes into play, as plaintiff urges, only after an overtaking driver has noticed or is chargeable with notice of the necessity to stop, I think we should decline to follow it. I am not in accord with plaintiff's view, embraced by the trial court, that one may drive at a speed greater than will permit him to stop within the assured, clear distance ahead until such time as circumstances develop which put him on notice or charge him with notice that in order to avoid a collision he must now drive so as to be able to stop within the assured, clear distance ahead and that the measure of his negligence is confined to what he does or fails to do from and after that instant. That is not the meaning of the cases cited by plaintiff, unless the *Rossien Case* may be said to so hold, nor may the cases cited by defendant be viewed as permitting of any such construction. As said in *Ter Haar* v. *Steele, supra* (pp 171, 172):

"The court instructed the jury that 'the assured clear distance between moving vehicles * * * proceeding in the same direction cannot be in excess of the actual distance intervening between the leading vehicle and the following vehicle. This applies to moving vehicles only, not a parked one.' The plaintiff contends that this would permit the jury to find that, if the facts were that Underhill was following at 40 feet behind the defendant and could not stop within 40 feet, he would be guilty of negligence. Ter Haar claims that under the above facts he would not necessarily be guilty of negligence for the assured clear distance ahead statute does not apply to moving vehicles when the vehicle in front stops suddenly, without warning, and the need to stop is not apparent to the driver of the following vehicle, citing *Weaver* v. *Motor Transit Management Co.*, 252 Mich 64. *This instruction was not error.* If the plaintiff was following too closely, then he was guilty of negligence. The assured clear distance statute applies to moving vehicles, *Winslow* v. *Veterans of Foreign Wars National Home,* 328 Mich 488; *Gordon* v. *Hartwick,* 325 Mich 534, and the assured clear distance can be no greater than to the rear of the first vehicle, *Fugere* v. *Aronson,* 285 Mich 661."

The question is not whether plaintiff's driver conducted himself as an ordinary, reasonable and prudent man would have done under like circumstances after it was too late, when he discovered, when but 75 feet behind the third vehicle, that the latter was stopping. Under the statute the question, rather, is whether he had theretofore driven and still was driving at a speed and in a manner such that when that instant arrived it was no longer possible for him to do what the statute requires, namely, be able to stop within the assured, clear distance ahead. Whether that distance was the distance intervening between the 2 vehicles or that distance plus such ad-

ditional distance as the third vehicle would require in order to stop in a normal and lawful manner is of no moment inasmuch as it appears from the facts and from plaintiff's driver's admission that he could not have stopped within either.

It should be observed that plaintiff's driver was not confronted with a sudden emergency or circumstance of a character that might not reasonably have been anticipated. In that connection we note that while defendant's negligence undoubtedly caused the driver of the third vehicle to decelerate rapidly, it was not directly the action of defendant, but rather the normal, lawful and not unusual action of the third vehicle in slowing down that confronted plaintiff's driver with the sudden necessity for doing the same. That action of the third vehicle in suddenly slowing down in a perfectly normal, natural and lawful manner was not of such emergency character nor so unusual that plaintiff's driver ought not to have anticipated it. It was for such occurrences that the statute was designed. It would impute nothing short of foolishness to the legislative intent to say that the assured, clear distance ahead statute was not intended to apply when everything ahead of a driver seems safe, but only to apply after and when, due to the previous disregard of its provisions, an emergency arises in which compliance with the statute is no longer possible. Under that sort of theory it would follow that the statute need not be heeded under the first situation and cannot be under the second. When, then, is the statute to be invoked? Apparently, under plaintiff's theory, only when the overtaking driver has had notice or become chargeable with notice of the necessity for stopping far enough back so that he still could do so in safety and, in utter disregard of such notice, proceeds heedlessly onward. My view of the statute is not so narrow. The statute speaks in terms of

speed. Its intent is to prohibit traveling at a speed such that when the necessity for stopping first becomes apparent it is, as here, no longer possible to do so in time to avert a collision. Hence, the statute's use of the words *"assured, clear distance ahead."* The exceptions when one's assured, clear distance ahead has been suddenly shortened by the unlawful and not-to-be-anticipated actions of another have already been noted.

Under the plain meaning of the statute and our previous decisions, it seems to me that plaintiff must be held to have been guilty of contributory negligence as a matter of law, barring his right to recover.

Judgment for plaintiff should be reversed, with costs to defendant.

SHARPE and CARR, JJ., concurred with DETHMERS, C. J.

SMITH, J. The opinion of the Chief Justice reveals the potentialities of a mechanical and unwarranted application of the doctrine of contributory negligence.

Here we have a drunk driver on Grand River avenue, a heavily-traveled, 4-lane, arterial highway. He was driving west. Suddenly, and without warning, he turned to his left, crossed in front of 2 vehicles attempting to pass him in the passing lane, "went straight across the double yellow line, and across 2 eastbound lanes to the curb." There was traffic moving east. "I don't understand," testified the driver of the Mercury station wagon (which was ultimately struck by the plaintiff) "how this (eastbound) traffic avoided striking the red pickup." After driving onto the south shoulder, the defendant turned to the north, crossed again all 4 lanes of traffic, and finally came to a stop in the ditch on the

north side of the highway. In the scramble result-
ing from the recklessness described, 3 of the vehicles
in the westbound lane came into collision.

These wanton antics on a wet and hazardous night
resulted in widespread destruction of property and
imminent danger to human life. Yet, brought to
book, as the erstwhile intoxicated defendant has
been, in a court of law by one imperiled and injured
thereby, it is proposed that we permit him to walk
from court scot-free and unscathed because, it is
said, his victim was contributorily negligent.

Thus our open invitation to recklessness without
retribution. As the drunk careens back and forth
across the 4-lane highway he wears a judge-bestowed
mantle of immunity. It is fashioned like this: Our
statute law says that every motorist must so drive
that he can stop within the assured, clear distance
ahead. All of the surrounding drivers are plain to
be seen (there is no allegation of fog, blinding snow,
or other impediment to vision) as the drunk driver
"shoots" and "careens" (the words are the trial
court's) across westbound and eastbound roads, not
once, but twice. If one of the sober drivers in his
original direction of travel (I will call them, for the
purpose of differentiation, the "sober" drivers) runs
or skids into a fellow motorist who, by braking and
maneuvering on the slippery pavement, is himself
trying to elude the intoxicated menace, he, the sober
driver, will collect no damages from the drunk.
Why? (1) Because the "assured clear distance" be-
tween 2 vehicles following each other is the distance
from the car behind to the next car ahead; (2) It is
clear that the plaintiff's driver (the following truck)
did not stop within this distance or there would have
been no collision with the car ahead; (3) Since plain-
tiff's driver did not so stop, he has been "contribu-
torily negligent," and, having so offended, his em-
ployer cannot recover. In other words, we apply the

doctrine of contributory negligence to shield the very person whose prior reckless acts caused the crisis which gave rise to negligence "as a matter of law" on the part of plaintiff's driver. This is poor morals, poor government, and poor law all rolled into one, and while we have no primary jurisdiction in the first 2 fields, we have ample with respect to the third, and I urge that we use it.

1. *The origins of contributory negligence.*

What is this doctrine of contributory negligence which has lent itself to such distortion? The result proposed in the case before us, the complete release from liability of the intoxicated driver, should shock us into a thorough re-examination of the rule, its antecedents and its application. If the rule demands such a result, if it leaves us no choice but to free the drunk and penalize the sober, then all branches of government having to do with the formulation, enunciation, and administration of law are remiss in leaving our people exposed to its baleful influence. If, on the other hand, the result comes not from necessities of the law but from our own mechanical application thereof without regard to the proper qualifications that we (in the past), and the overwhelming majority of courts have placed on it, the baleful influence comes from us and is within our power to correct. At all events, we can no longer postpone an onerous task.* What, again, is this doctrine of contributory negligence?

The first thing to notice is that it is not, properly speaking, negligence at all. "Negligence is conduct

---

* Our debt to the great scholars must be spread on the record. The press of modern dockets does not permit the once-possible research in original sources. We have been aided by the monumental work of Harper and James, "The Law of Torts," by Prosser's articles and landmark treatise, by Harper's text and writings, by the acute analyses of Dean Leon Green, by the Restatement of Torts, and by the work of many scholars, reference to some of whom is made in the body of the opinion.

which creates an undue risk of harm to others."
3 Restatement, Torts, § 463, comment (b). But contributory negligence is conduct which involves an undue risk of harm to the actor himself. Negligence involves a duty to others. Contributory "negligence" does not. Actually, what we are talking about (Prosser, Torts, §§ 51, 52, p 394 *et seq.*) is contributory "fault" or contributory misconduct. Only when we get that (fault) concept clearly in mind will we be in a position to apply the doctrine properly to the facts before us.

The doctrine of contributory negligence, its place in our modern law, cannot be understood without a consideration of its time and place of development. Try as we will, we cannot escape the past. It intrudes itself upon us and will not be denied. We must pay it deference lest it betray us into error, and with us our people, and justice itself. It is the fashion with some to speak of this doctrine of contributory negligence as though it were as ancient as time itself. "It has been a rule of law from time immemorial," said the court in *Pennsylvania R. Co.* v. *Aspel,* 23 Pa 147, 149, quoted in 2 Harper and James, Law of Torts, § 22.1, note, p 1195, "and is not likely to be changed in all time to come, that there can be no recovery for an injury caused by the mutual default of both parties." Actually, however, most authorities agree that it came into the English law with the case of *Butterfield* v. *Forrester* (1809), 11 East 60 (103 Eng Rep 926). (Defendant had negligently left a pole across the highway and plaintiff was injured by it, although he might have seen and avoided it had he not been "riding with great violence.") It came into the law casually, and as casually crossed the Atlantic. It is not a doctrine of great antiquity or

dignity.*   It was not, as a matter of fact, introduced in its parent case with any discussion of pertinent principles or weighing of social consequences. (Bohlen, Contributory Negligence, 21 Harvard L Rev 233.) It was simply stated. It squinted at cause and smelled of the early "last human wrongdoer" doctrine. Thus the *Butterfield* court remarked that with ordinary care the plaintiff (who, we observed, "had been riding with great violence") could have seen the obstruction. Hence, "the accident appeared to happen entirely from his own fault." Its ready acceptance, indeed, is in part attributable to its linkage with medieval principles of causation (8 Holdsworth, History of English Law [1922], p 459; James, Last Clear Chance, 47 Yale L J 704). But only in part is it so attributable. The more significant factor was the burgeoning industrial revolution. We have discussed heretofore (*e.g., Salmon* v. *Bagley Laundry Co.,* 344 Mich 471, dissent 475; *Pazan* v. *Unemployment Compensation Commission,* 343 Mich 587, dissent 592; *Powell* v. *Employment Security Commission,* 345 Mich 455, dissent 462) the impact of the great revolution upon our legal doctrines and precedents as concerned workingmen and their families. But our entire society was affected since the dangers of the new mechanical devices (*e.g.,* the railroads) marched hand in hand with their blessings. Injuries multiplied. Recoveries, however, did not keep pace. The causes of denial were both philosophical and economic, social as well as legal. (Bohlen's Contributory Negligence, 21 Harvard L Rev 233, and Malone's The Formative Era of Contributory Negli-

---

* It has been stated that "something like" a doctrine of contributory negligence was recognized in Roman law.  8 Holdsworth's History of English Law, p 459; *cf.* Hillyer, 11 Tulane L Rev 112, 119, "There is a great deal of confusion as to whether the Roman law contained a concept of contributory negligence or whether it established some other doctrine to meet the situation of fault on the part of both parties."

gence, 41 Ill L Rev 151.) In this pattern of denial, possibly essential thereto, was the doctrine of contributory negligence. On the substantive side it was perfectly consistent with the intense individualism of the common law. But it served, as well, a procedural purpose, for

"By adoption of the doctrine of contributory negligence, a court could, in many cases, find a welcome means by which to control, or even to eliminate, the jury. Specific features of plaintiff behavior, acts or omissions which would be apt to recur frequently in special types of cases, as for instance in railroad crossing accidents, could be handled by rule-of-thumb judgments, soon to be regarded as rules of law, leaving nothing to be considered by the jury. Thus, the issue of contributory negligence came to be 'an ingenious device which gave the court almost complete freedom to accept or reject jury participation at its pleasure.'" (Turk, Comparative Negligence on the March, 28 Chicago-Kent L Rev 189, 199.)

We will not probe deeper for identification of elements. They are complex and of varying molecular weights. Contributory negligence had arrived, so to speak, together with its brothers in arms, the fellow-servant rule and assumption of risk. We have long struggled with their application to modern society, to an economy and life where, in great numbers of tort actions, neighbor no longer sues neighbor for simple personal transgressions arising from individual frictions, but where the action is a concomitant to mass operations and movements of great segments of our society. The struggle has been reflected in both legislative and judicial action. Thus, in a related field, it was the inability of the common-law tort concepts to cope with the vast numbers of industrially injured that resulted in the passage of the workmen's compensation acts. Yet so persistent

have been these very concepts that we are only today (*e.g., Sheppard* v. *Michigan National Bank,* 348 Mich 577), freeing ourselves, in part, from their erroneous application.

With respect to contributory negligence, Michigan (unlike certain other States of the Union) has had no legislative amelioration of its present-century rigors. As a result, we insert in the law today a doctrine as harsh in its application as it is obscure in its antecedents, the doctrine that the slightest amount of causally connected negligence on the part of the plaintiff will be a complete bar to the defendant's liability. It will not merely reduce plaintiff's recovery in proportion to his fault, as those ignorant of the niceties of the law might suppose, but will prevent any recovery whatever by him, though his negligence, as compared with that of the defendant, may be as the mote to the beam. It compares with the primitive black or white of the medieval lawyer, and the contemporary dichotomy of the medieval philosophers that a human was either "good" or "bad." The doctrine is uniquely ours. "The United States is virtually the last stronghold of contributory negligence. The last vestiges of the complete defense disappeared long since from all of continental Europe, which divides the damages. Great Britain, all of the Canadian provinces, New Zealand and Western Australia now have come to the same result, so that very little of the British Empire is left with the common-law rule. Even in the United States there is far more in the way of division of damages than is generally realized * * * in successful operation." (Prosser, Comparative Negligence, 41 California L Rev 1, 2.) Regardless, however, of its roots or its antecedents, the doctrine confronts us for application in the case at bar. It is an established part of our Michigan jurisprudence. We propose to apply it. The rule of comparative negligence

does not obtain in this State. *Gibbard* v. *Cursan,*
225 Mich 311. Nevertheless, if we are not to apply
the doctrine of contributory negligence blindly, me-
chanically, we must search for its justification, if
any, under modern conditions, hoping to find there-
from our guide to its proper application today.

### 2. *Asserted justifications for the doctrine.*

Can contributory negligence be justified on the
ground that plaintiff, having himself to some degree
been at fault, does not come into court with "clean
hands"? *Davis* v. *Guarnieri,* 45 Ohio St 470 (15
NE 350, 4 Am St Rep 548). Clearly not. There is
no such general rule in damage actions. This is not
an ecclesiastical court. As a matter of fact, we fre-
quently allow recovery to those whose actions have
been far from faultless, as the last clear chance cases
so well illustrate: *Daniels* v. *Bay City Traction &
Electric Co.,* 143 Mich 493; *Fike* v. *Pere Marquette
R. Co.,* 174 Mich 167; *Calvert* v. *Detroit United Rail-
way,* 202 Mich 311; *Kelley* v. *Keller,* 211 Mich 404
(20 NCCA 228); *Goonen* v. *Ann Arbor R. Co.,* 218
Mich 502. Closely linked to the clean-hands "ex-
planation" is that of assumption of risk. This has a
verbal and superficial attraction only, for, as Bohlen,
*supra,* 245, points out, "The differences between vol-
untary assumption of risk and contributory negli-
gence are many and fundamental." With respect to
assumption of risk we have a plaintiff whose conduct
is based upon deliberation. He, being free to take
it or leave it (the dangerous exposure) has chosen
to take it. The essence of contributory negligence,
however, is the absence of deliberation. The
thoughtful will not want for additional fundamental
differences.

Is the "true" explanation to be found in the de-
terrent factor, the theory that motorists will drive
more carefully if they know their contributory negli-

gence will bar recovery? "A plaintiff who has learned the law of contributory negligence by the hard experience of losing a verdict is likely to be more careful in future." Schofield, Davies v. Mann: Theory of Contributory Negligence, 3 Harvard L Rev 263, 270.* If, indeed, this argument has validity it is entitled to great weight, for any device, legal or otherwise, tending to promote driver caution is entitled to serious consideration. The difficulty with it is its lack of realism. If the prospect of mutilation or loss of life will not deter the careless driver, it is to be doubted that the loss of a lawsuit (should it ever develop) will be more efficacious. Moreover, still in the realm of realism, let us not forget that for every contributorily negligent driver who is denied damages for his relief, we have another driver who set the machinery of disaster in motion but who completely escapes responsibility therefor through the doctrine of contributory negligence. The whip of deterrence to the one is counterbalanced by the boon of absolution to the other.

The explanation most often offered is framed in terms of proximate cause, particularly by the English jurists. Thus, in *Thomas v. Quartermaine* (1887), 18 QBD 685, 697 (56 LJQB 340, 57 LT 537), we find Bowen, L. J., stating:

"It (contributory negligence) rests upon the view that though the defendant has in fact been negligent, yet the plaintiff has by his own carelessness severed the causal connection between the defendant's negligence and the accident which has occurred; *and that the defendant's negligence accordingly is not the true proximate cause of the injury.*" (Italics ours.)

---

* *Davies* v. *Mann,* 10 M & W 546 (152 Eng Rep 588).—REPORTER.

The difficulty with the proximate cause explanation, however, as pointed out by Harper and James, *supra,* § 22.2, pp 1199, 1200, is that

"it simply does not fit the facts. In the typical case of contributory negligence both plaintiff and defendant would be liable to any third person injured by the accident. Thus if 2 automobile drivers collide at an intersection because neither is keeping a lookout, both are everywhere held liable to a bystander hurt by the collision. This of course means that the negligence of each is both a cause in fact and a proximate cause of the collision (and ensuing damage) under any tests having general currency among the courts today. Yet under the contributory negligence rule, neither driver can recover from the other for his own injuries."

What we finally face, as such explanations, one after the other, fade in the light of inquiry and analysis, is the matter of fault. The plaintiff is being denied recovery because (and this we declare as a matter of law) his was a portion of the fault. *But if we are to consider his fault, we should, in all fairness, consider the fault of the other.* (See Cooley, J., in *Detroit & Milwaukee R. Co.* v. *Van Steinburg,* 17 Mich 99, 119.) Not for reasons of abstract symmetry, but because of human experience: fault is rarely the monopoly of one party to an accident. Yet the doctrine of contributory negligence so treats it in our court today, denying the fundamental principle of right and justice that juries weigh the merits and demerits of each of the parties to a controversy.

3. *Qualifications of the doctrine, procedural and substantive.*

But right and justice will not be denied, nor will they be contained by what the courts call logic or what the lawyers call precedent. "Almost from the

very beginning," we are told by Harper and James, *supra,* § 22.3, "there has been serious dissatisfaction with the Draconian rule sired by a medieval concept of cause out of a heartless laissez-faire." Described as "the harshest doctrine known to the common law of the nineteenth century" (Green, Illinois Negligence Law, 39 Illinois L Rev 36), it has been subjected to many inroads, both procedural and substantive. Thus, on the adjective side the "old rule" placed the burden of pleading freedom from contributory negligence upon the plaintiff himself. This, as one writer has observed (Turk, *supra,* 200), is an anomaly in the law and "is much the same as if, in every contract case, the plaintiff were required to plead and prove his freedom from insanity." The reasons offered therefor are curiously circular. It is sometimes said that since the essence of the plaintiff's complaint is that he has been injured by the negligent act of the defendant, without himself having contributed to such injury, *therefore* the absence of contributory negligence is a part of his case. This is a complete *non sequitur.* Why should the absence of contributory negligence be any more a part of his case than its presence a part of defendant's case? Do we ordinarily require that a plaintiff show himself blameless (*as a part of his affirmative case*) before he can maintain an action? Or, is his default a matter of defense to the cause of action asserted? Concededly, these are matters of substantive fairness and justice between the parties, as to which reasonable men may differ. They are not laws of nature. But the point to be observed is that the above reason given, and often relied upon, is not a reason at all. The explanation for the "old rule" must be found in other considerations, which we will not in this case explore. It is, however, pertinent to note that the overwhelming movement of the courts is away

from the old rule. As Dean Green observed (39 Illinois L Rev 116, 125):

"With almost unanimity in Anglo-American jurisdictions, contributory negligence is held to be a matter of defense, with the burden on the defendant to plead the defense and sustain it by a preponderance of the evidence. The courts which in the beginning made the same mistake as did the supreme court of Illinois in placing the burden on the plaintiff, have corrected the mistake either partially or altogether or have had it corrected for them by legislation."

See, also, 2 Restatement of Torts, § 477. "The burden of establishing the plaintiff's contributory negligence rests upon the defendant," the Restatement going on to comment, "if the plaintiff makes out a prima facie case, the defendant, if he relies upon the plaintiff's contributory negligence, must prove it."

On the substantive side, also, great areas of exceptions began to be carved out of the rule, in our Court as well as others across the nation. We will confine our attention to the one with which we are here concerned, the doctrine of the intentional wrong. As expressed by 2 Restatement of Torts, § 481, "when the defendant is subject to liability because his conduct is intended to cause injury, the fact that the plaintiff's own conduct amounts to contributory negligence is not sufficient to bar recovery." Closely linked in theory to this inroad is that involving the wilful, wanton or reckless wrong, described in 38 Am Jur, Negligence, § 178, in these terms:

"There is an abundance of authority for the proposition that contributory negligence is not a defense in an action based upon willful or wanton misconduct."

A leading case on the principle is our own case of *Gibbard* v. *Cursan*, 225 Mich 311, a case involving the death of a pedestrian, who, "while walking on a paved country highway, on her way home from school, was overtaken, struck, and fatally injured," by a motor vehicle. This, it was charged, was a wanton, wilful, and reckless act. Among other defenses urged was deceased's "contributory negligence as a matter of law." There having been judgment for the plaintiff in the lower court, we carefully examined the relationship of contributory negligence as a defense to wilful, wanton and reckless acts of a defendant, distinguished ordinary negligence, even though gross in nature, from an act characterized by wanton or reckless disregard of human rights, and concluded as follows (pp 320, 321):

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfullness, rather than by inadvertence, it transcends negligence—is different in kind. Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the defense of contributory negligence than in a case of assault and battery. True, such misconduct in this State and elsewhere usually has been called negligence, the word being qualified by such adjectives as gross, wanton, reckless, or wilful, but this is incorrect and has a tendency to mislead. We quote from a well-written opinion (*Atchison, T. & S. F. R. Co.* v. *Baker,* 79 Kan 183, 189, 190 [98 P 804, 21 LRA NS 427]):

"'Although what is really reckless and wanton misconduct is sometimes spoken of as gross negligence, the expression is everywhere recognized as inaccurate and unfortunate, because it seems to imply a difference only of degree, whereas the whole

doctrine that contributory negligence is no defense where the injury is the result of recklessness and wantonness is based upon the theory of a difference in kind. For the same reason, the phrase "reckless and wanton negligence" has a misleading tendency. One who is properly charged with recklessness or wantonness is not simply more careless than one who is only guilty of negligence. His conduct must be such as to put him in the class with the wilful doer of wrong. The only respect in which his attitude is less blameworthy than that of the intentional wrongdoer is that, instead of affirmatively wishing to injure another, he is merely willing to do so. The difference is that between him who casts a missile intending that it shall strike another and him who casts it where he has reason to believe it will strike another, being indifferent whether it does so or not.' "

*Battishill* v. *Humphreys*, 64 Mich 514, 521, is equally explicit:

"The defendants being guilty of reckless negligence under the circumstances disclosed by the testimony in running their train without keeping a proper lookout, and in consequence thereof having run over plaintiff, and injured her, the question of contributory negligence does not arise, even had the plaintiff been of that age at which the law would have imposed upon her the duty of exercising due care to avoid injury."

The Restatement of Torts, vol 2, § 482, comment (a), states the principle in these words:

"If the defendant's conduct amounts to reckless disregard of the plaintiff's safety as those words are defined in § 500,* the plaintiff is not barred from recovery by any form of contributory negligence."

---

* "The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the

See, also, *Teeter* v. *Pugsley,* 319 Mich 508, wherein defendant's "claim of error with respect to contributory negligence and assumption of risk" was denied upon authority of the *Gibbard Case,* quoted in part, *supra.*

A recent and thoughtful examination of the principle as applied to motor vehicle collisions on the highways is found in *Alabam Freight Lines* v. *Phoenix Bakery, Inc.,* 64 Ariz 101 (166 P2d 816). In this case 2 trucks with semitrailers collided. The defendant was passing another truck and trailer on a hill at the crest of which were both a cut and a curve. The plaintiff's truck was proceeding up the hill in the opposite direction. He was on his own proper side of the highway but he was going at such speed that "he could not stop the truck within the range of his vision." (Our assured clear distance statute,* as we noted in *Odell* v. *Powers,* 284 Mich 201, 205, is merely "the legislative expression of the common law in effect at the time the *Marsh Case* was decided." The *Marsh Case* [*Marsh* v. *Burnham,* 211 Mich 675] had described a motorist's obligation to drive, says the *Odell* court, "at a speed not greater than would permit him to bring it to a stop within the assured clear distance ahead.")

It was the defendant's argument that plaintiff was guilty of contributory negligence by reason of his being unable to stop within the assured clear distance. Plaintiff, however, asserted that such rule had no application upon these facts because of defendant's wilful and wanton acts. The court, upholding plaintiff's contention, carefully analyzed the fact situation presented in the following terms:

---

actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." 2 Restatement, Torts, § 500.

* See, currently, CLS 1954, § 257.627 (Stat Ann 1952 Rev § 9.2327).
—REPORTER.

"It is the position of defendant that there was no evidence introduced in the lower court to warrant and justify a finding of willful and wanton negligence on his part. We believe that the bare recitation of the facts emphatically refutes this contention. Defendant's driver was not only guilty of violating the statute relative to overtaking and passing a preceding vehicle, but he did it in a manner demonstrating reckless disregard for the safety of others, knowing or having reason to know that a reasonable man would realize that his conduct not only created an unreasonable risk of bodily harm to others but also involved a high degree of probability that substantial harm would result to others. The conduct of defendant's truck driver falls squarely within the definition of wanton or willful misconduct as set forth in the Restatement of the Law, Torts, vol 2, § 500, which reads as follows: 'The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' * * *

"Defendant's truck driver not only violated this section but he was guilty of wanton and reckless conduct even in the absence of such statute. [Arizona Code Annotated 1939, §§ 66–108.] We feel that the uncontradicted facts show that defendant's driver was demonstrating a reckless disregard for himself and for the safety of others in attempting to pass another truck upon ascending a grade on an S-curve near the crest of the hill at a point where he could not see that the move could be made in safety. We are thoroughly convinced that a reasonable man under those circumstances would have anticipated that another vehicle might be approaching from the opposite side of the hill and would not

have attempted to pass until his view was to (*sic* so?) unobstructed that he could have assumed that his passing could be executed in safety." *Alabam Freight Lines* v. *Phoenix Bakery, supra,* 106, 107.

The reason for the rule was well expressed by the Massachusetts court, as quoted in *Alabam Freight Lines, supra* (pp 110, 111):

"At common law the defense of contributory negligence was not available in cases of willful misconduct or wanton negligence. The clearest and most forceful expression of the rules and principles applicable to this kind of liability that we have been able to discover is to be found in the reported case of *Aiken* v. *Holyoke St. R. Co.,* 184 Mass 269, 271 (68 NE 238, 239). We approvingly quote therefrom as follows:

" 'It is familiar law that, in the absence of a statutory provision, mere negligence, whatever its degree, if it does not include culpability different in kind from that of ordinary negligence, does not create a liability in favor of one injured by it, if his own negligence contributes to his injury. It is equally true that one who willfully and wantonly, in reckless disregard of the rights of others, by a positive act or careless omission exposes another to death or grave bodily injury, is liable for the consequences, even if the other was guilty of negligence or other fault in connection with the causes which led to the injury. The difference in rules applicable to the 2 classes of cases results from the difference in the nature of the conduct of the wrongdoers in the 2 kinds of cases. In the first case the wrongdoer is guilty of nothing worse than carelessness. In the last he is guilty of a willful, intentional wrong. His conduct is criminal or quasi-criminal. If it results in the death of the injured person, he is guilty of manslaughter. *Commonwealth* v. *Pierce,* 138 Mass 165 (52 Am Rep 264) ; *Commonwealth* v. *Hartwell,* 128 Mass 415 (35 Am Rep 391). The law is regardful of human life and personal safety, and,

if one is grossly and wantonly reckless in exposing others to danger, it holds him to have intended the natural consequences of his act, and treats him as guilty of a willful and intentional wrong. It is no defense to a charge of manslaughter for the defendant to show that, while grossly reckless, he did not actually intend to cause the death of his victim. In these cases of personal injury there is a constructive intention as to the consequences, which entering into the willful, intentional act, the law imputes to the offender, and in this way a charge which otherwise would be mere negligence becomes, by reason of a reckless disregard of probable consequences, a willful wrong.' "

The reasoning behind these cases is clear: Wanton misconduct is a different kind of offense than ordinary negligence, even though it be gross. Fault is involved in both, but in the one the fault of the callous, the brutish, the quasi-criminal, in the other the human frailty of lack of care, of inattention, of diversion. These are faults of different hues in the spectrum of human conduct and so the courts have treated them. Our Court should do likewise.

4. *Application of the doctrine, with its qualifications, to the case at bar.*

What do we have in the case before us? First of all, we cannot agree with the conclusion of the Chief Justice, that the trial court was in error in applying the emergency doctrine to the assured clear distance statute. The statute must be reasonably construed. A literal reading thereof would compel us to say that in every case of collision the statute has been violated by the mere fact of collision alone. The driver has either been going too fast, or, if driving at a reasonable speed, has permitted his attention to wander and thus has not perceived the obstruction in time to stop. Such literal interpreta-

tion would make the driver an insurer against any collision in which he might become involved. We cannot assume that the legislature intended such a result. The situations under which collisions occur are infinite in complexity and variety, and, to accomplish justice in particular cases, we have been forced to create a number of exceptions to the statutory edict, one of which is that here relied upon by the plaintiff, the sudden emergency exception, employed by the trial court and rejected as inapplicable by the Chief Justice. If, in fact, we were here compelled to rely upon this exception to resolve liability for harm resulting from the alcoholic capers of the defendant we are far from convinced that the trial court was in error in its application of the emergency exception we have created. If the emergency exception seems unduly narrow in scope and phrasing we should re-examine its content as drunken drivers jeopardize the peace and safety of our citizens on the highways of the State.

Such re-examination is not, however, under the facts upon the record, required. Even if we accept the analysis of the Chief Justice that the plaintiff was in truth guilty of contributory negligence, the defendant is not relieved since, as pointed out above, contributory negligence is no defense to wanton and reckless behavior. In other words, the defense of contributory negligence is immaterial to the facts here pleaded and proved. Here we have a charge by the plaintiff, denied by the defendant, that the defendant operated his vehicle in wilful and wanton disregard of the plaintiff and others on the highway. It is clear on the record, as was alleged, that such operation was by a driver who was under the influence of intoxicating liquor. The trial court, having seen the witnesses and having heard the testimony, characterized the defendant's driving as "heedless and reckless," and, in addition, found that, "At the

time this unhappy chain of events began to unfold, plaintiff was operating his vehicle in a careful and prudent manner. He was perfectly within his rights in attempting to follow the Mercury station wagon around the defendant and the Alger truck." Accordingly, judgment was rendered for plaintiff.

The trial court's judgment for plaintiff was properly rendered. The emergency doctrine employed by the lower court is applicable upon the facts found by that court. Even if it were not, however, the defendant was found guilty as a matter of fact of the reckless and wanton conduct pleaded in the declaration, in view of the proof of intoxication and the acts performed, and plaintiff's contributory negligence, even if it existed, was therefore no defense to liability therefor.

Affirmed. Costs to appellee.

Edwards and Black, JJ., concurred with Smith, J.

Kelly, J. (*concurring in affirmance*). This appeal does not present conflict between the 2 well-known principles of law, namely—(1) assured clear distance ahead and (2) sudden emergency.

Defendant created a sudden emergency at a time when plaintiff was legally and properly operating his vehicle. I agree with the trial court's opinion, which states:

"At the conclusion of plaintiff's proofs, both sides rested, with the defendant maintaining that even though he himself was negligent, that the plaintiff cannot recover because he failed to stop in safety within the assured clear distance ahead. Admittedly the plaintiff could not stop his vehicle within the space separating his truck from that of the Mercury at the time the defendant commenced his heedless and reckless course of conduct. * * *

"The sole question to be decided is whether the driver of the plaintiff's vehicle was guilty of such contributory negligence as bars its recovery.

"Defendant claims that plaintiff was guilty of such negligence, which as a matter of law, bars his recovery. With this position I cannot agree.

"At the time this unhappy chain of events began to unfold, plaintiff was operating his vehicle in a careful and prudent manner. He was perfectly within his rights in attempting to follow the Mercury station wagon around the defendant and the Alger truck. Had the defendant remained in his lane of traffic, no accident would have occurred. Suddenly there was created an emergency not of the plaintiff's own making. It is from this time that we must judge the plaintiff's action to determine whether he acted as a reasonably prudent man, and did all that such a man would or could have done to avoid the accident. In attempting to follow the station wagon, he had no warning that he would be suddenly called upon to stop because of the negligence of the defendant. He was in no apparent danger, nor did he have reason to anticipate that the actions of the defendant would create such danger. Admittedly, he could not stop his heavily loaded train within the distance which separated him from the Mercury, but he had no reason to anticipate that the negligence of the defendant would make such stopping imperative. Under the circumstances I cannot hold the plaintiff was guilty of negligence, as a matter of law."

The driver of a slow-moving vehicle cannot suddenly turn into the path of a passing vehicle which is being driven in a legal and prudent manner and then absolve himself of his negligence by invoking the assured clear distance ahead rule of the road. The judgment of the trial court should be affirmed.

Voelker, J., took no part in the decision of this case.